The STATE of Ohio, Appellee,

v.

MINKNER, Appellant.

[Cite as *State v. Minkner* (1994), 93 Ohio App.3d 127.]

Court of Appeals of Ohio,
Clark County.

No. 2840.

Decided Feb. 9, 1994.

*Richard P. Carey,* Montgomery County Assistant Prosecuting Attorney, for appellee.

*Richard Mayhall,* for appellant.

FAIN, Judge.

Defendant-appellant Ray W. Minkner appeals from his conviction and sentence for kidnapping. Minkner contends that the trial court erred by failing to grant his motion, made at the close of the state's evidence, for the opportunity to swear in an impartial and objective party to conduct an examination of the defendant's sexual organ, who would then testify concerning his findings. Minkner also contends that the trial court erred by failing to give an instruction for the lesser included offense of unlawful restraint.

Because there was no request for an instruction on unlawful restraint, this assignment of error is governed by the plain error standard of review, and we find no plain error. However, we agree with Minkner that the trial court erred

to his prejudice by failing to grant his motion for an opportunity to designate an impartial and objective party to conduct a physical examination of his sexual organ, who could then testify concerning the findings from that examination. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for a new trial.

## I

Tia Davis, an admitted prostitute and thief, testified that she got into Minkner's car after he asked her for help in finding out where he could purchase some beer. Davis testified that after she got in the car with Minkner, he sexually assaulted her, driving her from Springfield to a place near Englewood, Ohio, while continuing to assault her and insist that she perform sexual acts upon him.

Eventually, Davis jumped out of Minkner's car and fled. She was seen by another motorist, Kenneth Minear. She told Minear that she had been on a date with Minkner, who had become more sexually aggressive with her than she was prepared to accept. She told Minear that she just wanted to go home; however, Minear contacted the police without Davis's knowledge or approval, and then brought her into contact with the police.

Davis gave a taped statement to police, which was introduced in evidence at the trial. There were some inconsistencies between the taped statement and Davis's trial testimony.

The taped statement of Tia Davis that was played for the jury included the following exchange, in which Davis is presumably "speaker 2," and the police officer is presumably "speaker 1":

"SPEAKER 1: And then while you—while you're doin' that with the glove, he forced you to have oral sex with him?

"SPEAKER 2: Yes.

"SPEAKER 1: Okay. Did he ejaculate?

"SPEAKER 2: No.

"SPEAKER 1: Did he secrete any fluid that you can remember or recall that we might be able to find on him or on you?

"SPEAKER 2: I don't think so.

"SPEAKER 1: Okay. So then after that, you got—

"SPEAKER 2: But his penis—I tell you what, his penis right below the end like he had some kind of surgery or somethin'.

"SPEAKER 1: Below the head of his penis? Okay.

"SPEAKER 2: Right like, like (inaudible) I remember seein' like a red line or somethin'.

"SPEAKER 1: Scar or somethin'?

"SPEAKER 2: Yeah."

Minkner was arrested and charged with rape and kidnapping. The jury found him not guilty of rape, but guilty of kidnapping. A judgment of conviction was entered for kidnapping, and Minkner was sentenced accordingly. From his conviction and sentence, Minkner appeals.

## II

Minkner's first assignment of error is as follows:

"The trial court erred and abused its discretion in overruling the defendant's request for a physical examination to determine whether his penis had the physical characteristics described by the alleged victim."

At the conclusion of the state's evidence, Minkner made a motion, which was denied, as follows:

"MR. ARNTZ [representing Mr. Minkner]: Thank you. Finally, the defense would move for the opportunity to swear in an impartial and objective party, presumably an employee of the courthouse, bailiff, court reporter, clerk of courts, or the like, to examine the appearance of my client's penis, and to come into the courtroom, take an oath like any other witness, and testify as to the appearance of his penis. The reason for that would be that Tia Davis has, as part of her testimony, in order to convince the jury that she, in fact, performed oral sex on my client, described some unusual features or characteristics that his penis supposedly has. We believe, for instance, she stated to Detective Garman that there was a redness or some marks, some lines or possibly some indication of surgery that was suggested to Detective Garman on his penis when she observed it.

"We believe the record would reflect that examination by an impartial person would reflect no such appearance, no such characteristics. It would be an additional exculpatory item of evidence which would tend to disprove her allegation that she performed oral sex on him. We believe it's the type of evidence the defense is entitled to present to the jury in order to rebut what she has told them. The defense don't [sic] know of any other way to present this information to the jury and we would make the motion to the Court to permit that procedure at this time.

"THE COURT: Mr. Carey.

"MR. CAREY [representing the State]: The State would register its objection, again, to this motion. First of all, the statements by Tia Davis were disclosed voluntarily by the State sometime before this trial. The State has not received any disclosure of any proposed witness or any expert to examine these marks. So we feel as though under the disclosure rules that that type of evidence should be excluded. Secondly, the mark described by the victim Tia Davis is not sufficiently of—not sufficient[ly] import[ant] to necessarily guide any independent expert to search for anything in particular on the penis of the defendant. This mark could be any number of things. It's not a sufficient peculiarity to warrant granting this type of motion. Third, the defendant could testify about that if he so desired. His wife is also, according to his counsel, in the courtroom. She could be called to testify under these circumstances. They certainly have that avenue available to them if they so desire. For these reasons, the State would ask the Court to overrule this particular motion.

"THE COURT: All right. Well, very frankly, I recall Ms. Davis' testimony to some extent in that respect. I don't recall, however, any further testimony that would cause that to be an identifiable feature as to this particular defendant, no testimony's been offered, no evidence other than her statement. Beyond that, as I recall her testimony, I don't believe that the description would give rise to any kind of a discernable characteristic which would be disclosed whether, or for that matter, whether it was permanent or temporary, and therefore, discernable by an examination at this point in time. So I'm going to deny your motion."

Minkner did not testify at trial. However, the state introduced his statement to the police, in which he denied that any sexual activity, consensual or otherwise, took place.

In his closing argument to the jury, Minkner's counsel appeared to concede that sexual activity took place, or at least that sexual activity was proposed between his client and Tia Davis, but that it was consensual in the context of the relationship between a prostitute and her customer. Essentially, Minkner's counsel argued that negotiations broke down at some point, or that there was some other disagreement between Minkner and Davis, as a result of which she got out of Minkner's car in an angry frame of mind.

Defense counsel did a good job in pointing to discrepancies that existed between the taped statement that Tia Davis gave to police and her testimony at trial. Defense counsel also did a good job in pointing to inherent problems with Tia Davis's version of events.

The jury evidently did not believe Tia Davis's testimony in its entirety because the jury acquitted Minkner of rape. However, the jury evidently did not believe Minkner's statement to the police entirely either, because it convicted him of kidnapping.

In summary, it appears that this was a difficult one-on-one case, in which the jury was not entirely sure whom to believe.

Under these circumstances, Davis's statement concerning a red line on Minkner's penis resembling a surgical scar takes on especial significance. Had the jury been confronted with one additional apparent discrepancy in Tia Davis's testimony, it might have become the straw to break the camel's back with respect to the kidnapping charge. In other words, the jury might have decided to reject Tia Davis's testimony in its entirety, rather than partially.

The trial court appears to have denied Minkner's motion for the designation of an impartial person to examine his penis upon the ground that the scar or mark may have been temporary, so that the fact that it was no longer evident at the time of trial would have no probative value. In our view, the possibility that the scar or mark that Tia Davis claimed to have seen was sufficiently temporary to have become indiscernible at the time of trial was a matter for consideration by the jury.

The state also contends that Minkner or his wife could have testified concerning the physical appearance of his penis. As Minkner points out, however, such testimony by a biased witness would be of less value than similar testimony by an unbiased witness, having no connection to either party, who would conduct a visual examination of Minkner's penis, and report his findings.

Essentially, Minkner wished to make the jury aware of the physical appearance of his penis, apparently in an effort to show that Tia Davis's statement concerning a surgical scar or mark was an embellishment of a story having no basis in fact. Considerations of propriety precluded Minkner from directly exhibiting his penis to the jury. Under these circumstances, we conclude that his request to designate an impartial person to conduct a visual examination and testify concerning the findings of that examination was a reasonable request. Although Minkner did not quite ask the court to call its own witness for this purpose, pursuant to Evid.R. 614, that is one way in which Minkner's motion could have been accommodated.

Minkner appears to concede, and we agree, that his motion was confided to the sound discretion of the trial court. Given the nature of this case as a one-on-one case involving a direct conflict between the testimony of the complaining witness and the statement given by the defendant to police, and also given the significant questions that Minkner was successful in raising concerning the credibility of the complaining witness, we conclude that the trial court abused its discretion when it denied Minkner's motion for permission to designate an

impartial person to conduct a visual examination and to testify concerning the findings of that examination.

Minkner's first assignment of error is sustained.

## III

Minkner's second assignment of error is as follows:

"The trial court committed plain error in failing to instruct the jury on unlawful restraint in violation of R.C. 2905.03 as a lesser included offense to kidnapping in violation of R.C. Sec. 2905.01."

The state contends that an instruction on the lesser included offense of unlawful restraint was not justified in this case because there was no evidence before the jury that would reasonably have supported a verdict of not guilty of kidnapping, but guilty of unlawful restraint. The state contends that since there was no evidence that Minkner restrained Davis of her liberty for any purpose other than engaging in sexual activity against her will, there is no evidence to support the intermediate verdict.

Where the testimony of a complaining witness conflicts with the statement given by the defendant to police, the jury is not required to believe one version or the other in its entirety, but may find the truth to lie somewhere between the two versions. In the case before us, the jury necessarily found the truth to lie somewhere between the versions submitted by Davis and by Minkner, in view of the fact that it convicted Minkner of kidnapping, but acquitted him of rape. The jury could reasonably have concluded that Davis was restrained against her will, possibly as a consequence of a breakdown in the negotiations between prostitute and customer, but that Minkner never intended to force Davis to engage in sexual activity against her will. Accordingly, an instruction on the lesser included offense of unlawful restraint was warranted.

However, we agree with the state that the plain error standard of review is not satisfied in this case. Because of the strategic significance of a defendant's decision whether to present a jury with a possible intermediate result, or to leave the jury with an all-or-nothing proposition in the hope of an acquittal, a failure to give an instruction concerning a lesser included offense will not ordinarily constitute a manifest miscarriage of justice when the defendant has not requested such an instruction.

We conclude, based upon this record, that the failure to give an instruction concerning the lesser included offense of unlawful restraint was error, but not plain error.

Minkner's second assignment of error is overruled.

134

IV

Minkner's first assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

BROGAN and WOLFF, JJ., concur.