JOURNAL ENTRY AND OPINION
{¶ 1} William Williams ("Williams") appeals his conviction for murder, felonious assault, and kidnapping. Williams argues that the trial court erred in failing to grant his motion for acquittal on the charge of kidnapping, that the jury's guilty verdict of kidnapping was against the manifest weight of the evidence, that the trial court committed prejudicial error when instructing the jury, that the trial court abused its discretion when it questioned a witness, that the trial court failed to make the required findings when imposing Williams' consecutive sentences, and that the imposition of consecutive sentences violated Williams' right to a jury trial. For the following reasons, we affirm.
 {¶ 2} This appeal arises from the events that occurred in the early morning hours of December 11, 2003. On the preceding evening, victim Arkidia Duncan ("Arkidia") drove her four children to pick up Williams, her on-again, off-again boyfriend, at an eastside recreation center. The five individuals then went to visit Arkidia's mother and aunt and then returned home to Arkidia's residence. Once there, the children went to their respective rooms while Arkidia and Williams remained in the living room. While in the living room, the couple engaged in a verbal altercation that ended when Williams left the residence.
 {¶ 3} Testimony revealed that a short time later, Williams returned to the residence and asked Arkidia to let him inside the home. Arkidia acquiesced and allowed Williams to enter the home but proceeded to leave him alone in the living room while she entered her son K.D's[1] room and laid down on the bottom bunk. K.D, who was eleven years old when this incident occurred, had been sleeping on the top bunk inside his room.
 {¶ 4} K.D. awoke when he heard his mother, Arkidia, screaming. K.D. opened his eyes and observed Williams attacking his mother with a knife. K.D. testified that Williams stabbed his mother repeatedly throughout her chest, arms and legs. K.D. attempted to help his mother by punching Williams in the jaw, but that only caused Williams to turn his attack from Arkidia to K.D. Arkidia fled from the bedroom into the living room while Williams struck K.D. with the knife. K.D. started to crawl under his bunk bed in an attempt to avoid further injury, but Williams left his bedroom. After Williams left his bedroom, K.D. testified that he heard a knock on the door. K.D. answered the door and saw his upstairs neighbor, who had come down after she heard screaming. Williams physically pulled K.D. away from the door, back into the house and shut the door behind him.
 {¶ 5} Arkidia's eldest child, S.D., who had been on the telephone with a friend during the attack, fled from the house in an attempt to get help. S.D. ran to a nearby bus stop where a gentleman allowed her to use his cellular phone to call police. S.D. called police and her grandmother, Arkidia's mother, and informed both parties that her mother's boyfriend had stabbed her.
 {¶ 6} When police and paramedics arrived at the house, Williams had already left and gone to his mother's residence. Emergency crew began treating both Arkidia and K.D. for numerous stab wounds and transported both victims to nearby hospitals for further treatment.
 {¶ 7} At Huron Road Hospital, doctors rushed Arkidia into surgery but were unable to save her. Arkidia had suffered approximately 24 knife wounds at the hands of Williams, causing her to bleed to death. At Rainbow Babies and Children's Hospital, Doctor Robert L. Perry, a pediatric surgeon, treated K.D. for his injuries. Dr. Perry testified that K.D. suffered four stab, or laceration-type injuries, including two in the back of the head. Doctors were able to treat K.D. for his injuries and release him to his grandmother later that day.
 {¶ 8} On that same day, Cartilda Adams ("Adams"), Williams' mother, learned that Arkidia had been killed and that police wanted to speak with her son. Adams testified that when she learned of the death, she and her son were at her residence. Adams asked her son whether he was involved but did not get a response from Williams. Williams then asked his mother to take him to the police station so he could speak with police. Adams obliged and accompanied her son to the Cleveland Police Department. After reading Williams his rights, Williams provided police with a statement wherein he admitted to stabbing Arkidia but claimed that he only stabbed her one time, and only after she came after him with a knife. Officers placed Williams under arrest for the murder of Arkidia Duncan.
 {¶ 9} The Cuyahoga County Grand Jury indicted Williams with aggravated murder with a course of conduct specification, attempted murder, and kidnapping. At the close of the State of Ohio's case, Williams moved for acquittal under Crim. R. 29, which the trial court denied. Defense counsel renewed their motion for acquittal after it rested and the trial court again denied the motion. The trial court then provided the jury with their instructions after acquiring approval from both the State and defense counsel. After deliberating, the jury found Williams guilty of murder, felonious assault, and kidnapping.
 {¶ 10} At the sentencing hearing, the trial court heard from members of the victim's family and from Williams' mitigation specialist. The trial court sentenced Williams to fifteen years to life on count one; eight years on count two, to run consecutive with the sentence imposed on count one; and eight years on count three, to run concurrent with the sentences imposed for counts one and two. Williams appeals raising the six assignments of error contained in the appendix to this opinion.
 {¶ 11} In his first and second assigned errors, Williams argues that the trial court erred in denying his motion for acquittal on the charge of kidnapping, and that the jury's guilty verdict on the charge of kidnapping was against the manifest weight of the evidence. We disagree.
 {¶ 12} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the State, could have found the essential elements of a crime proven beyond a reasonable doubt. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 13} While the test for sufficiency requires a determination of whether the State has met their burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Thompkins, supra. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387.
 {¶ 14} Though the jury found Williams guilty of murder, felonious assault and kidnapping, Williams only takes issue with the guilty verdict as it relates to the kidnapping charge.
 {¶ 15} R.C. 2905.01(A) provides "[n]o person by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * (2) [t]o facilitate the commission of any felony or flight thereafter; (3)[t]o terrorize, or to inflict serious physical harm on the victim or another * * *"
 {¶ 16} Viewing the facts in a light most favorable to the State, we glean the following: K.D. was born on May 2, 1992, making him eleven years old at the time of this offense; Williams removed K.D. from the doorway of his house and shut the door behind him, preventing K.D. from leaving the residence; Williams committed this act during the murder of Arkidia; and, after Williams prevented K.D. from leaving, Williams terrorized both K.D. and Arkidia and then fled the scene. We therefore find that any rational factfinder, viewing these facts in a light favorable to the State, could have found that the State of Ohio proved the essential elements of kidnapping beyond a reasonable doubt. Accordingly, the trial court did not err in denying Williams' motions for acquittal.
 {¶ 17} Moreover, we cannot say that the jury lost its way and created a manifest miscarriage of justice in finding Williams guilty of kidnapping. Though at trial defense counsel argued that K.D's statements contained conflicts, those conflicts did not relate to what occurred when K.D. opened the door. K.D. testified clearly that Williams removed him from the doorway and shut the door behind him. Additionally, the State presented corroborating evidence through the upstairs neighbor, who testified that K.D. answered the door but Williams pulled him back into the house and shut the door. We therefore find that Williams' conviction for kidnapping was not against the manifest weight of the evidence.
 {¶ 18} Williams' first and second assignments of error are overruled.
 {¶ 19} In his third assignment of error, Williams argues that the trial court erred when it failed to give the jury an instruction on unlawful restraint, the lesser included offense of kidnapping. We disagree.
 {¶ 20} Initially we note that Williams' counsel failed to request an instruction on the lesser included offense of unlawful restraint. Morever, Williams' counsel approved of the instructions prior to their submission to the jury. Therefore, Williams' failure to object waived this issue absent plain error. State v. Allen 73 Ohio St.3d 626,1995-Ohio-283. Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, 96-97. The Ohio Supreme Court has held that "[n]otice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 21} We decline to find plain error in this case. The second appellate district has held that "failure to give an instruction concerning a lesser included offense will not ordinarily constitute a manifest miscarriage of justice when the defendant has not requested such an instruction." State v. Minkner (1994), 93 Ohio App.3d 127. Williams' counsel failed to request the instruction on the lesser included offense and, therefore, no manifest miscarriage of justice has occurred. Accordingly, Williams' third assignment of error is overruled.
 {¶ 22} In his fourth assignment of error, Williams argues that the trial court abused its discretion under Evid. R. 614(B) in effectively cross-examining the State's witness for purposes of rehabilitation. We disagree.
 {¶ 23} Williams argues that the trial court abused its discretion when it questioned Dr. Seligman, a forensic pathologist from the Cuyahoga County Coroner's Office. Specifically, Williams finds error with the trial court's questioning of Dr. Seligman regarding the specific type of injury to Arkidia's heart and the cause of her death.
 {¶ 24} Rule 614(B) of the Ohio Rules of Evidence provides:
 {¶ 25} "The court may interrogate witnesses in an impartial manner,
 {¶ 26} whether called by itself or by a party."
 {¶ 27} It is clear to this appellate court, that a trial court is authorized to question witnesses, provided that it is done in an impartial manner. Moreover, this Appellate Court previously held the following: "If counsel believes that the court is not conducting the interrogation in an impartial manner, or that the interrogation in some way violates the defendant's right to due process, Rule 614(C) provides counsel with a method of objecting to the court's interrogation of witnesses. It relaxes the usual procedure for making objections and allows counsel to wait until the `next available opportunity when the jury is not present.'" State v. Elizey (Sept. 5, 1985), Cuyahoga App. No. 49234, 1985 Ohio App. LEXIS 8710.
 {¶ 28} Williams' fourth assignment of error must fail because his trial counsels did not avail themselves of the opportunity provided by Evid. R. 614(C) and failed to object to the trial court's questioning of Dr. Seligman. Furthermore, their failure to object was immaterial because we find the trial court conducted its interrogation in an impartial manner.
 {¶ 29} Williams' fourth assignment of error is overruled.
 {¶ 30} In his fifth assignment of error, Williams argues that the trial court erred in sentencing him to consecutive sentences. We disagree.
 {¶ 31} R.C. 2929.14(E)(4) provides:
"If multiple prison terms are imposed on an offender for convictions ofmultiple offenses, the court may require the offender to serve the prisonterms consecutively if the court finds that consecutive service isnecessary to protect the public from future crime or to punish theoffender and that consecutive sentences are not disproportionate to theseriousness of the offender's conduct and to the danger the offenderposes to the public, and if the court also finds any of the following:
 (a) The offender committed one or more of the multiple offenses whilethe offender was awaiting trial or sentencing, was under a sanctionimposed pursuant to section 2929.16, 2929.17, 2929.18 of theRevised Code, or was under post-release control for a prior offense.
 (b) At least two of the multiple offenses were committed as part of oneor more courses of conduct, and the harm caused by two or more of themultiple offenses so committed was so great or unusual that no singleprison term for any of the offenses committed as part of any of thecourses of conduct adequately reflects the seriousness of the offender'sconduct.
(c) The offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime by the offender." See, also, State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165.
 {¶ 32} When a trial court imposes consecutive sentences under R.C. 2929.14(E)(4), it must also comply with R.C. 2929.19(B)(2)(c), which requires that the trial court "make a finding that gives its reasons for selecting the sentences imposed." This requirement is separate and distinct from the duty to make findings required by R.C. 2929.14(E)(4).Comer, 99 Ohio St.3d at 467. Additionally, "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Id. at 468. These findings and reasons need not "directly correlate each finding to each reason or state a separate reason for each finding," but must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. State v. Reid, Cuyahoga App. No. 83206,2004-Ohio-2018, citing State v. Cottrell, Cuyahoga App. No. 81356,2003-Ohio-5806.
 {¶ 33} In the present case, the trial court complied with all of the requirements of R.C. 2929.14(E)(4). The court made the following findings on the record:
"I find consecutive sentences are necessary to punish you.
"* * *
"I find that consecutive sentences are not disproportionate. The seriousness of your conduct coupled with the potential future danger that you do possess to the public make this sentence of 23 years or 8 plus 15 not disproportionate.
"* * *
"My reasons are I do find you are a drug offender. Your mitigation expert came in here and indicated that. Your drug use, specifically that of PCP which has been talked about in this case, is a drug that predisposes one to violent behavior and I'm going to use that reason to demonstrate to any future reviewing body that you pose a future danger to the public crimes of violence. Additionally you've been found to be a drug felon in the past. You continue to abuse and you pose a future serious possibility of recidivism in the drug case." Tr. at 1578-1579.
 {¶ 34} Furthermore, the trial court complied with R.C. 2929.19(B)(2)(c). During the sentencing of Williams, the trial court gave its reasons for selecting consecutive sentences and aligned those reasons with the specific findings quoted above. Specifically, the trial court coupled the life-ending injuries suffered by Arkidia, the serious injuries suffered by K.D., the fact that Williams murdered a mother of four in front of her children, the brutal nature of Williams' crimes, that K.D., a child one third the size of Williams, attempted to stop him from harming his mother, the proportionality between Williams' conduct and the punishment, and the danger posed by Williams with the findings made above. It is clear to this court why the trial court imposed its sentence.
 {¶ 35} The trial court complied with the requirements of R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), therefore, Williams' fifth assignment of error is overruled.
 {¶ 36} In his sixth and final assignment of error, Williams argues that the imposition of consecutive sentences violated his right to a jury trial. We disagree.
 {¶ 37} Williams' argument that his consecutive sentences violate the U.S. Supreme Court's decision in Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531 has been addressed in this court's en banc decision of State v. Lett (May 31, 2005), Cuyahoga App. Nos. 84707 and 84729. In Lett, we held that R.C. 2929.14(C) and (E), which govern the imposition of maximum and consecutive sentences, do not implicate the Sixth Amendment as construed in Blakely. Accordingly, in conformity with that opinion, we reject Williams' contentions and overrule his sixth assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Sweeney, J., concur.
 Appendix A Assignments of Error:
"I. The trial court erred in denying defendant's motion for acquittalon the charge of kidnapping.
 II. The verdict of guilt on the charge of kidnapping was against themanifest weight of the evidence.
 III. The trial court committed prejudicial error in failing to give ajury instruction on the lesser included offense of unlawful restraint.
 IV. The trial court abused its discretion under Evid. R. 614(B) ineffectively cross examining the state's witnesses for purposes ofrehabilitation.
 V. The trial court failed to make the necessary findings underthe Ohio Revised Code to impose consecutive sentences.
 VI. The imposition of consecutive sentences in this case was made inviolation of defendant-appellant's right to trial by jury."
[1] This court protects the identity of all juvenile parties.