DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Ottawa County Court of Common Pleas which, following a jury trial, found appellant, Marcus Herrera, guilty of attempted murder, in violation of R.C. 2923.02(A) and R.C.2903.02(A), a felony of the first degree (count one), felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree (count two), felonious assault with a deadly weapon, in violation of R.C. 2903.11(A)(2), a felony of the second degree (count three), and carrying a concealed weapon, in violation of R.C. 2923.12(A), a misdemeanor of the first degree (count four). Appellant was sentenced on June 27, 2005, to a term of three years incarceration as to count one, and two years incarceration as to count three, with the sentences to be served concurrently, with credit for time served, and was ordered to pay costs.
 {¶ 2} Appellant raises the following assignments of error on appeal, however, we will be determining them in a different order for better flow:
 {¶ 3} "I. The trial court denied Herrera his right to due process; right to trial by jury and right to present a defense under the United States and Ohio Constitutions when it failed to allow defense counsel to view the grand jury transcript to determine if there was anything relevant contained therein for his defense or irregular in the proceeding leading to the indictment.
 {¶ 4} "II. The trial court erred to the prejudice of Herrera and denied Herrera his right to due process and a fair trial in not granting the Rule 29 motions for judgment of acquittal as to counts I, II and III at the end of the state's case and after the verdict was announced.
 {¶ 5} "III. The trial court denied Herrera his right to a fair trial as guaranteed by the Due Process Clause of the fourteenth amendment; right to trial by jury; right to present a defense by erroneously instructing the jury.
 {¶ 6} "IV. The trial court denied Herrera a right to a fair trial by not instructing on the lesser included offenses for attempted murder and felonious assault.
 {¶ 7} "V. Herrera's convictions should be overturned because they are against the manifest weight of the evidence.
 {¶ 8} "VI. The trial court erred to the prejudice of Herrera when it overruled the motion to enter convictions on lesser included offenses.
 {¶ 9} "VII. The trial court denied Herrera his due process of law by excluding certain evidence."
 {¶ 10} This matter arises out of an altercation occurring on Put-in-Bay Island in The Boathouse Bar ("the bar"). On July 24, 2004, the bar was extremely crowded. Appellant arrived at the bar prior to 10:00 p.m. with some acquaintances. According to appellant, a man in a yellow shirt began harassing him. Words were exchanged and a fight ensued. Christopher Johnson, a patron in the bar that night, testified that appellant threw the first punch. Appellant, however, testified that he was struck first by the yellow-shirted man from behind.
 {¶ 11} The victim in this case, Brandon Copeland, a bouncer at the bar, and Rudy Takacs, another bouncer, responded to the fight. Appellant was lying on the dance floor being beaten and kicked. Copeland stood over appellant to prevent him from being kicked anymore. Takacs began to escort the yellow-shirted man to the front door.
 {¶ 12} According to Copeland, when appellant was on the dance floor, appellant attempted to grab and bite Copeland's inner thigh while Copeland was standing over him. Copeland then identified himself as security and got appellant to his feet. Appellant responded, "I am sorry. I didn't know." Copeland began escorting appellant toward the back door. Appellant stopped and Copeland told him he had to leave. A woman distracted Copeland by asking if everything was all right, and then, when Copeland turned back around, he saw appellant's hands coming forward. Believing appellant was trying to strike him, Copeland grabbed appellant and pushed him down to the ground at the back door. Copeland's attention was again diverted by the sound of a scream, when he turned back toward appellant, appellant stabbed him in the abdomen.
 {¶ 13} According to appellant, however, he testified that he blacked-out for a period of time while being beaten on the dance floor, and had no recollection of trying to bite or grab Copeland. Appellant stated that Copeland never identified himself as security, and that appellant had no idea who Copeland was. According to appellant, Copeland repeatedly shouted at appellant, "I will f____k you up" as he was "charging" appellant. Appellant stated that he was apologizing to Copeland because he did not know why Copeland was angry and charging him. Appellant thought that he had perhaps hit Copeland during the scuffle. Appellant testified that he had his hands up because he did not want to fight, and denied ever taking a swing at Copeland.
 {¶ 14} When pushed to the floor, appellant testified that he remembered the knife in his pocket, pulled it out, opened it, and thrust it toward Copeland, who then fell back. Appellant testified that he thought he was going to continue to be beaten and that he "strongly felt that [he] was going to die * * * that night there." Appellant was subdued by Takacs and held on the ground, face down, until police arrived. Appellant testified that he asked Takacs, "Was that the bouncer that I stabbed?" Takacs, however, denied that appellant said anything, but apologies, while he was holding appellant down.
 {¶ 15} Kelly Simmons, a patron in the bar that night, testified that she observed Copeland escorting appellant out. She stated that appellant was walking backwards in front of Copeland. At times, appellant was walking on his own and, at other times, Copeland was assisting appellant to keep him moving. Simmons testified that appellant was acting "crazy," with his arms in the air, but did not appear to be afraid or defending himself. Simmons' account regarding the actual stabbing was consistent with that of Copeland's and appellant's.
 {¶ 16} Officer Adam Smosny testified that, following the altercation, appellant stated the following to him:
 {¶ 17} "* * * I got in a verbal argument with a bouncer, and I don't remember what the argument was about. * * * The two people who I think was bouncers tried to throw me out of the bar, and I was afraid because they were so big. So I took out my knife and stabbed one of them. The guy in the yellow shirt was the one who started the argument."
 {¶ 18} Appellant's knife was a butterfly knife and had a three and one-half to four inch blade. Witness accounts varied regarding the number of times appellant stabbed Copeland, however, the medical testimony presented was that there were two stab wounds to Copeland's abdomen. Copeland's intestines were severed and surgery was required to repair him. Copeland's injuries were considered serious. Appellant suffered a broken jaw and rib, and injury to his eye and forehead as a result of his altercation with the yellow-shirted man.
I. Grand jury transcript.
 {¶ 19} Appellant argues in his first assignment of error that the trial court abused its discretion by failing to allow defense counsel to view the grand jury transcript to determine if there was anything relevant contained therein for his defense or irregular in the proceedings. Specifically, appellant asserted that since most of the police reports and the witnesses' statements supported the fact that appellant was the victim of a violent assault prior to stabbing Copeland, an indictment of attempted murder was inconsistent with the witnesses' statements because there was no showing that appellant acted purposefully. As such, appellant argued that he needed to review the grand jury minutes in order to determine "if prejudicial or false information was presented to the grand jurors in order for them to improperly indict in this case," and for purposes of impeachment at trial.
 {¶ 20} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy. * * *" State v.Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus. "[W]hen the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial, grand jury proceedings may be disclosed." State v.Sellards (1985), 17 Ohio St.3d 169, 173.
 {¶ 21} The existence of a particularized need is a fact question to be determined by the trial judge, and the ultimate decision rests within the sound discretion of the court. Greer
at paragraphs one and three of the syllabus. A decision denying release of the transcript will not be reversed absent an abuse of discretion. State v. Coley (2001), 93 Ohio St.3d 253, 261, citing, State v. Brown (1988), 38 Ohio St.3d 305, 308. "The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 22} In this case, the trial court ordered the transcript of the grand jury minutes in order to conduct an in camera review to determine "whether there were any irregularities in the grand jury proceedings which would include the return of an indictment on something less than probable cause." The trial court stated that, after examining the transcript, it would then determine if appellant had established a particularized need to review the transcript. Ultimately, the trial court determined that there were no irregularities with the grand jury proceedings, that the transcript contained nothing that would assist appellant on the issue of purpose or mens rea, and concluded that "the testimony of grand jury witnesses [was] consistent with the reports and police records which [were] disclosed."
 {¶ 23} A "particularized need" may be established, enabling defense counsel to review grand jury testimony, when there is evidence that the trial testimony of a witness differs from his grand jury testimony. See Greer, supra. See, also, State v.White (1968), 15 Ohio St.2d 146, paragraph four of the syllabus, wherein the court held:
 {¶ 24} "In a criminal case, the defendant has a right to an in camera inspection by the trial court, with counsel for the state and the defendant, to determine the existence of inconsistencies between the testimony of the prosecution's witnesses and their prior statements."
 {¶ 25} However, in State v. Laskey (1970),21 Ohio St.2d 187, 191, overruled on other grounds, (1972), 408 U.S. 936, the Ohio Supreme Court held that the rule announced in the fourth paragraph of the syllabus of White is not applicable to pre-trial motions for production of the grand jury transcript. Rather, the court held:
 {¶ 26} "The White rule contemplates a limited investigation for the purpose of determining whether inconsistencies exist between a witness' prior statements and his testimony at trial. Such investigation can be made only after the witness testified at trial, and, generally, can not be used by an accused for ascertaining the evidence of the prosecution for the purpose of trial preparation. It is a discovery device only for the purposes of impeachment upon cross-examination." Id.
 {¶ 27} In this case, appellant requested the grand jury transcript prior to trial. Because there had not yet been any testimony taken, appellant failed to establish a particularized need for the transcript for the purpose of cross-examination of the state's witnesses. See Laskey at 191. Appellant did not renew his request for production of the grand jury transcript during trial. Appellant, however, also argues that he was entitled to the transcript to determine whether the grand jury was given false information concerning the case and whether it properly indicted him.
 {¶ 28} The Ohio Supreme Court has held that there was no "particularized need" established in cases where there were allegations that (1) the charges were "elevated," State v.Benge (1996), 75 Ohio St.3d 136, 145; (2) the indictment was issued on inadequate evidence, Brown, supra at 308; or (3) the indictment was based on "illegal and incompetent evidence,"State v. Davis (1988), 38 Ohio St.3d 361, 365. See, also,Coley, supra at 262; and State v. Stojetz (1999),84 Ohio St.3d 452, 459-460. In fact, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." UnitedStates v. Calandra (1974), 414 U.S. 338, 345. Consequently, "a challenge to the grand jury's finding of probable cause does not demonstrate a particularized need for disclosure of the testimony." State v. Blalock, 8th Dist. Nos. 80419 and 80420, 2002-Ohio-4580, at ¶ 24.
 {¶ 29} Upon review of the record, we find that there is no indication that the trial court abused its discretion in finding that appellant failed to establish a particularized need to enable him to review the grand jury transcript. Appellant, however, additionally argues that the trial court erred by reviewing the transcript of the grand jury proceedings without defense counsel.
 {¶ 30} In this case, the trial court decided to conduct an in camera review on its own in order to determine whether appellant had established a particularized need for disclosure of the grand jury transcript. According to Greer, 66 Ohio St.2d at 150, while determining the existence of a particularized need, the trial court "may" conduct an in camera inspection of the grand jury minutes while assisted by counsel; however, there is no requirement that defense counsel examine the grand jury transcript until a particularized need has been established. SeeGreer at paragraph four of the syllabus. Moreover, with respect to his request for production of the grand jury transcript, we note that counsel for appellant suggested to the trial court that it conduct an in camera review:
 {¶ 31} "[DEFENSE COUNSEL]: I guess the best safeguard to assure that a secret proceeding isn't released to a party unnecessarily is to have it produced and inspected by this Court in camera."
 {¶ 32} Based on the foregoing, we find that the trial court did not abuse its discretion in denying appellant access to the grand jury transcript. Appellant's first assignment of error is therefore found not well-taken.
II. Erroneous Jury Instructions.
 {¶ 33} Appellant argues in his third assignment of error that he was denied his right to a fair trial due to the trial court's erroneous jury instructions regarding the definitions of "purpose", "knowingly", "voluntary act", and "great bodily harm". A jury instruction "must be viewed in the context of the overall charge." State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus. We review a trial court's decision to grant or refuse requested jury instructions for an abuse of discretion.State v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 34} In this case, the trial court defined "purpose" as follows:
 {¶ 35} "A person acts purposely when it is his specific intention to cause a certain result.
 {¶ 36} "It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to purposely cause another's death.
 {¶ 37} "Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.
 {¶ 38} "The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
 {¶ 39} "The purpose with which a person does an act or brings about a result is determined from the manner in which it was done, the means or weapon used and all the other facts and circumstances in evidence.
 {¶ 40} "If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life or inflict great bodily harm, the purpose to cause the death may be inferred from the use of the weapon."
 {¶ 41} Appellant argues that the trial court's instruction, that purpose may be inferred from the use of a deadly weapon, "minimized the necessity of proving specific intent and eviscerated any other possible lesser mens rea requirements for other crimes" arising out of the same conduct. We disagree. It is well-settled that the use of the word "may" indicates that this was a permissible presumption, i.e., one that the jury could choose to accept or not, and was not mandatory. State v.Stallings (2000), 89 Ohio St.3d 280, 291; State v. Loza
(1994), 71 Ohio St.3d 61, 81; and State v. Edwards (1976),49 Ohio St.2d 31, 45, overruled on other grounds, (1978),438 U.S. 911. Additionally, the trial court said that purpose could be "inferred" from the use of a deadly weapon, not that it was "presumed." See Stallings at 291. Accordingly, we find that the trial court's instruction as to "purpose" did not create a conclusive presumption that the mere use of a deadly weapon established proof of specific intent.
 {¶ 42} Regarding the term "knowingly," appellant argues that the trial court's definition "diminished the mens rea requirement for culpability required under the statute." In conjunction with the definition of "purpose," appellant argues that "the mere use of a weapon became sufficient to constitute the prohibited conduct." We disagree. The trial court instructed the jury as follows regarding the term "knowingly":
 {¶ 43} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 44} "Knowingly means that a person is aware of the existence of the facts and that his acts will probably cause a certain result or be of a certain nature.
 {¶ 45} "Now since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.
 {¶ 46} "You will determine from the facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that he would cause serious physical harm to another."
 {¶ 47} The definition of "knowingly" given by the trial court in this case was recognized as a correct definition by the Ohio Supreme Court in State v. Teamer (1998), 82 Ohio St.3d 490,492. Additionally, having found no error with respect to the definition given for the term "purpose," we find no cumulative error. Accordingly, we find that the trial court did not err with respect to its instruction regarding the term "knowingly."
 {¶ 48} Appellant also argues that the trial court erred by not including the definition of "voluntary act," as requested by defense counsel. Appellant requested that the following language, originating from R.C. 2901.21(A) and (D)(2), be included in the instructions:
 {¶ 49} "[A] person [is] guilty only if, one, it is a voluntary act; and two, the person has the requisite mental state. * * * Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts."
 {¶ 50} Based upon the testimony presented at trial, although appellant testified that he was so fearful for his safety that he had no recourse but to stab Copeland, there was no evidence to support that appellant's stabbing of Copeland resulted from a body movement that was not a product of appellant's own volition. To the contrary, appellant testified that when he was knocked to the ground by Copeland, he did the following:
 {¶ 51} "I leaned over. I remembered that I had a knife in my pocket. I leaned over. He was above me. I pulled the knife out of my pocket and then I laid it on the ground when I did. I opened the knife and then I stuck the knife in him."
 {¶ 52} The trial court denied appellant's requested instruction on the basis that it was already covered in the instructions. Upon a review of the instructions, we find that the jury was properly instructed and that an additional instruction regarding voluntary acts was not required.
 {¶ 53} Finally, appellant argues that the trial court failed to "harmonize" the terms "great bodily harm" and "serious physical harm." The trial court held that the terms meant "the same thing," and only defined "serious physical harm" and "physical harm," in accordance with the definitions provided by R.C. 2901.01(A)(3) and (5), but did not define "great bodily harm." Rather, when asked by the jury for "a legal determination of the term inflict great bodily harm," the trial court instructed them that if a term was not otherwise defined for them, they were to rely on their common understanding of the English language. Appellant's counsel agreed to the trial court's instruction in this regard and, therefore, waived all but plain error. Based upon a review of the jury instructions as a whole, we find that the trial court did not err in instructing the jury.
 {¶ 54} Based upon the foregoing, we find that the trial court did not abuse its discretion or prejudice appellant with respect to the jury instructions given. See Price, 60 Ohio St.2d 136 at paragraph four of the syllabus; and State v. Hardy (1971),28 Ohio St.2d 89, 92. Appellant's third assignment of error is therefore found not well-taken.
III. Exclusion of Evidence.
 {¶ 55} Appellant argues in his seventh assignment of error that the trial court abused its discretion by not permitting into evidence (1) the photographs taken of appellant after his jaw surgery; (2) a full examination of Officer Smosny regarding the yellow-shirted man; and (3) a full examination of appellant's character witness, Dominic Qurazzo, regarding appellant's character for peacefulness. In general, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. This court will not disturb a trial court's evidentiary ruling absent a finding of abuse of discretion, i.e., that the trial court's attitude was unreasonable, arbitrary or unconscionable and not merely "an error of law or of judgment."State v. Adams, 62 Ohio St.2d at 157.
 {¶ 56} We find that the trial court did not abuse its discretion with respect to any of the evidentiary matters complained of by appellant. The fact that appellant's jaw was broken while he was at the bar on the evening of July 24, 2004 was not disputed and was presented to the jury. Photographs depicting the condition of appellant on the evening in question were presented to the jury. Photographs of appellant following his jaw surgery, however, were not relevant, and were properly excluded by the trial court.
 {¶ 57} With respect to appellant's examination of Officer Smosny, appellant argues that "[i]n order to establish self-defense, counsel attempted to question Officer Smosny regarding the statement of the man in the yellow shirt to show that he had no interest in identifying himself and sticking around." Appellant asserts that this questioning was not allowed by the trial court. We disagree. The sole objection to appellant's questioning of Officer Smosny was in response to counsel's question, "Can you read the telephone number of the individual?" The objection to this question was sustained, but counsel was permitted to continue questioning Officer Smosny. Counsel elicited from the officer the fact that the identity of the yellow-shirted man is unknown, as his statement was illegible, and that he left the scene after making his statement. Accordingly, we find no abuse of discretion with respect to the trial court's ruling regarding appellant's examination of Officer Smosny.
 {¶ 58} As to appellant's examination of Dominic Qurazzo, the trial court sustained objections to the following testimony:
 {¶ 59} "Q. Explain for the jurors when you first met him, what you were doing in your life, what was going on?
 {¶ 60} "A. I was 17 and I worked for Pepsi Cola Bottling Company * * *. Professionally, Marcus was somebody I looked up to, he was more successful, made more money. He was a very caring person with me when we first met.
 {¶ 61} "[THE STATE]: Objection. * * *
 {¶ 62} "Q. Explain for the jury what kind of social settings you have accompanied Marcus?
 {¶ 63} "A. He has been to my house. I have been to his house. He knows my dad. We have gone out.
 {¶ 64} "[THE STATE]: Objection.
 {¶ 65} "THE COURT: * * * You are bringing in character testimony, and it is not appropriate. * * *
 {¶ 66} "[DEFENSE COUNSEL]: I am confused. I am laying a foundation for how he knows him, and for his ability to be able to offer his opinion as to Marcus' character for violence or non-violence. * * *
 {¶ 67} "THE COURT: Okay. But you have to limit it to the character trait of violence or non-violence. You are bringing in a whole host of other things that relate to his character. You can establish how he knows the fellow or how they know each other. * * *
 {¶ 68} "You can establish their relationship, but the camaraderie, the good feelings, that is not appropriate. * * *
 {¶ 69} "Q. The police officer characterized the statements [made by appellant] as unapologetic. Do you have, based on your knowledge of Marcus, do you have an opinion as to Marcus' character for being a sincere and caring person?
 {¶ 70} "[THE STATE]: Objection. * * *
 {¶ 71} "THE COURT: You are limited to his propensity for violence and non-violence. You can't stray from that.
 {¶ 72} "[DEFENSE COUNSEL]: I can't even rebut what another person, who didn't know him, tried to characterize him as?
 {¶ 73} "THE COURT: No. You can get into the issue of his character for truth and veracity, but only after he testifies."
 {¶ 74} Evid.R. 404(A) provides that generally "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," unless it is "[e]vidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same * * *." Upon review of the testimony excluded by the trial court, we find that the trial court did not abuse its discretion by limiting counsel's examination of Qurazzo.
 {¶ 75} Based on the foregoing, we find that the trial court did not abuse its discretion with respect to the evidentiary issues raised by appellant. Appellant's seventh assignment of error is therefore found not well-taken.
IV. Sufficiency and Manifest Weight of the Evidence.
 {¶ 76} Appellant argues in his second assignment of error that the trial court erred in denying his Crim.R. 29 motion for acquittal as to counts one, two and three, based upon the sufficiency of the evidence, and in his fifth assignment of error that the convictions were against the manifest weight of the evidence. With respect to sufficiency of the evidence, appellant asserts that "[n]o jury could have convicted [appellant] of `intending to cause the death of Copeland,' especially considering that [appellant] was violently attacked prior to pulling out the knife to defend himself and in a state of unconsciousness." With respect to the manifest weight of the evidence, appellant asserts that "[i]t is clear that the jury lost their way, especially based on one question they asked during deliberations: `If we are hung on one charge, do the other three verdicts hold?'"
 {¶ 77} Crim.R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses. As such, the issue to be determined with respect to a motion for acquittal is whether there was sufficient evidence to support the conviction. Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 78} "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 79} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge
(1988), 38 Ohio St.3d 56, 59. The court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins
at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. Id.
 {¶ 80} In order to be convicted of attempted murder, in violation of R.C. 2923.02(A) and R.C. 2903.02(A), the state must establish beyond a reasonable doubt that appellant purposely attempted to cause the death of another by engaging in conduct that, if successful, would have resulted in the death of Copeland. In order to convict appellant of felonious assault, in violation of R.C. 2903.11(A)(1), or felonious assault with a deadly weapon, in violation of R.C. 2903.11(A)(2), the state had to establish beyond a reasonable doubt that appellant caused serious physical harm to Copeland or that he caused serious physical harm by means of a deadly weapon.
 {¶ 81} Appellant again asserts that appellant could not have been convicted of counts one, two or three because of the incorrect jury instructions regarding the definitions of "purpose" and "knowingly." As discussed above, we find that the jury was not erroneously instructed. Having so held, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. By all accounts, appellant removed the butterfly knife from his pocket, opened it, and thrust it into Copeland's abdomen. Given the size of the knife, and Officer Steven Korossy's testimony that the sole purpose of a butterfly knife "is to stab somebody or to attempt to stab somebody," we find that there was sufficient evidence upon which the jury could rely in convicting appellant of attempted murder, felonious assault, and felonious assault with a deadly weapon. As such, we find that the trial court did not abuse its discretion in denying appellant's motion for judgment of acquittal, pursuant to Crim.R. 29.
 {¶ 82} We further find that appellant's conviction was not against the manifest weight of the evidence and that the trier of fact did not lose its way or create a manifest miscarriage of justice. Appellant clearly realized he was stabbing someone. The issue becomes whether he was acting in self defense when he stabbed Copeland.
 {¶ 83} In order to establish self defense, appellant had to establish by a preponderance of the evidence that he was not at fault in creating the situation giving rise to the altercation with Copeland and the yellow-shirted man, and that he had an honest belief, even if mistaken, that he was in imminent or immediate danger of bodily harm, and that his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.
 {¶ 84} Appellant testified that the yellow-shirted man started the initial altercation and threw the first punch. Appellant, however, also testified that prior to punches being thrown, he was engaged in a verbal argument with the yellow-shirted man. Moreover, Johnson testified that appellant threw the first punch. Additionally, with respect to his altercation with Copeland, Copeland testified that appellant attempted to bite and grab Copeland's thigh and that he later thought appellant was trying to take a swing at him. By both appellant's and Simmons' accounts, appellant did have his arms in the air as he was walking backwards in front of Copeland.
 {¶ 85} In addition to the evidence that appellant may have started the altercation(s), we find that there were significant inconsistencies between appellant's testimony and the other witnesses' testimony. A reasonable person could have found that appellant's testimony lacked credibility regarding his belief that he was in immediate danger of bodily harm or death, or that appellant responded with more force than appeared reasonably necessary under the circumstances. Appellant testified that he was disoriented, having just been beaten, did not know who Copeland was, felt threatened by Copeland's size and demeanor, and stabbed Copeland to protect himself. Appellant's testimony, however, was refuted by Officer Smosny who testified that appellant stated that he was being escorted out by the bouncers when he became afraid. Additionally, Simmons testified that appellant did not appear afraid, or as though he was defending himself, but was acting "crazy," waving his arms around.
 {¶ 86} Clearly, the jury did not find that appellant had established his affirmative defense of self defense by a preponderance of the evidence. Based on all the testimony presented, we find that there was sufficient evidence to support appellant's convictions and that the convictions were not against the manifest weight of the evidence. Appellant's second and fifth assignments of error are therefore found not well-taken.
V. Lesser Included Offenses.
 {¶ 87} Appellant argues in his fourth assignment of error that the trial court erred by failing to instruct on the lesser included offenses for attempted murder and felonious assault, e.g., attempted reckless homicide, attempted negligent homicide, aggravated assault, or assault. We disagree.
 {¶ 88} Appellant failed to request instructions on lesser included offenses and failed to object to their omission at trial. As such, appellant's argument on appeal is waived, except for plain error. Crim.R. 30(A); State v. Underwood (1983),3 Ohio St.3d 12, syllabus. In order to establish plain error, appellant must show that but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus. Further, only errors affecting substantial rights constitute plain error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long at paragraph three of the syllabus.
 {¶ 89} Relying on State v. Thrasher (Jan. 21, 1994), 2d Dist. No. 2996 and 2997, appellant argues that even when a party fails to request an instruction on a lessor included offense, when warranted under the facts, it is error for the trial court not to give such an instruction. In Thrasher, the trial court gave an instruction on the lesser included offense of assault, of which the defendant was found guilty. The second district noted that there was no indication in the record which party, if either, requested the instruction on simple assault, but found that no objection to the instruction was made at trial. The appellate court held that the defendant's failure to object to the instruction waived all but plain error. In considering whether plain error existed, the court held: "[N]ot only was the trial court correct in giving the instruction on the lesser included offense of assault, it would have been error had the instruction not been given in this case."
 {¶ 90} We find that appellant's reliance on Thrasher is misplaced. Because the instruction was included by the trial court, it would go beyond the scope of Thrasher to hold that it stands for the proposition that, even when a party fails to request an instruction as to a lessor included offense, where such an instruction would be warranted under the circumstances of the case, it would be plain error for the trial court not to give such an instruction. In fact, to the contrary, the second district held, in the month following Thrasher, that "a failure to give an instruction concerning a lesser included offense will not ordinarily constitute a manifest miscarriage of justice when the defendant has not requested such an instruction." State v.Minkner (1994), 93 Ohio App.3d 127, 133. The court reasoned that it was not plain error for the trial court to omit an instruction on a lesser included offense "[b]ecause of the strategic significance of a defendant's decision whether to present a jury with a possible intermediate result, or to leave the jury with an all-or-nothing proposition in the hope of an acquittal." Id. See, also, State v. Williams, 8th Dist. No. 85454, 2005-Ohio-4822, at ¶ 21.
 {¶ 91} Because appellant failed to request instructions on the lesser included offenses of attempted murder and felonious assault, we find that appellant waived all but plain error. Having found no manifest miscarriage of justice, we find appellant's fourth assignment of error not well-taken.
 {¶ 92} Appellant argues in his sixth assignment of error that the trial court erred by denying his request at sentencing to be convicted of lesser included offenses. Appellant argues that, pursuant to Crim.R. 31(C), which allows a defendant to be found not guilty of the degree charged but guilty of a lesser included offense, the trial court should have entered convictions for attempted reckless homicide or attempted negligent homicide as to count one, instead of attempted murder, and aggravated assault or assault as to counts two and three, instead of felonious assault and felonious assault with a deadly weapon.
 {¶ 93} Appellant raised the issue of lessor included offenses for the first time during sentencing. The trial court denied appellant's motion by finding that appellant had failed to request that the lessor included offenses be presented to the jury for their consideration and, in any event, based upon the evidence presented, found that there was no justification for charging on the lessor included offenses. We agree. Appellant had an opportunity to request that the jury be instructed to deliberate the lesser included offenses, but, for reasons known only to appellant, failed to do so. Moreover, we have already determined that there was sufficient evidence presented upon which the jury could rely in finding appellant guilty of the crimes charges. Accordingly, we find that the trial court did not err in sentencing appellant as convicted by the jury. Appellant's sixth assignment of error is therefore found not well-taken.
 Conclusion {¶ 94} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J., concur.