[Cite as *State v. Clark*, 2014-Ohio-855.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                         :                    C.A. CASE NO.    2013 CA 52

v.                                                              :                    T.C. NO.    12CRB5058

DONOVIN W. CLARK                            :                    (Criminal appeal from
                                                                                      Municipal Court)

    Defendant-Appellant                       :

                                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____7th____ day of _____March_____, 2014.

. . . . . . . . . .

MARC T. ROSS, Atty. Reg. No. 0070446, City of Springfield Prosecutor's Office, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JOHN PAUL RION, Atty. Reg. No. 0067020 and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 130 W. Second Street, Suite 2150, P. O. Box 1262, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Donovin Clark appeals his conviction and sentence for

one count of sexual imposition, in violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree. Clark filed a timely notice of appeal with this Court on June 17, 2013.

{¶ 2} During the fall of 2012, Clark began taking classes at Career Technology Center (CTC) located in Clark County, Ohio. The evidence adduced at trial suggested that shortly after starting classes, Clark began making unwanted and repeated physical contact with several female students also enrolled at CTC. Specifically, Clark was accused of touching the girls' buttocks, breasts, thighs, and stomachs without permission and after repeatedly being told to stop.

{¶ 3} On November 19, 2012, a group of female students approached Ms. Amy Schakat, the Director of Student Services and Academics at CTC, in order to discuss Clark's continued inappropriate touching. Schakat is one of three "principals" at CTC who oversee student conduct and handle student disciplinary matters. The group of female students, T.H., C.M., J.C., K.B., B.E., and E.H., informed her that since the fall term began, Clark had touched each of them inappropriately at various times. Schakat wrote down the girls' allegations during the brief meeting. The allegations were reported to the school superintendent who advised Schakat to bring Clark in for a discussion.

{¶ 4} During the meeting with Schakat on November 26, 2012, Clark denied that he inappropriately touched J.C. Clark further informed Schakat that he did not remember any of the incidents involving C.M., K.B., or B.E. Clark admitted that he grabbed T.H.'s buttocks during a graphic arts class in the middle of September for which he received a one-day in school suspension. Schakat explained to Clark that the touching and grabbing was inappropriate and pointed out that he had repeatedly been told to stop by the girls he

targeted. Clark responded to Schakat by saying that he does not "hear no or stop" when he is in a "zone." After the meeting, Schakat spoke with the school superintendent, and Clark received a ten-day suspension for his conduct.

{¶ 5} On November 27, 2012, Schakat contacted the Springfield Police Department regarding the allegations against Clark. Springfield Police Detective Trent King of the Crimes Against Persons Unit, Juvenile Division, was subsequently assigned to oversee the case. On November 30, 2012, Det. King separately interviewed each of the female victims at the CTC. After the interviews, Det. King filed warrants for the arrest of Clark for six counts of sexual imposition. Det. King arrested Clark on December 7, 2012, on the outstanding warrants and transported him to Springfield Police headquarters. Det. King questioned Clark regarding the victims' allegations. Clark admitted to grabbing T.H.'s buttocks, stating that he "went too far." Clark further admitted that he smacked K.B. on the buttocks on two separate occasions, but he said he was only joking. Clark admitted to touching B.E. on her thighs, and that E.H. slapped his hand away when he touched her. During the interview, Clark did not deny that he grabbed C.M.'s buttocks nor that he tried to bury his face between her breasts. While acknowledging that his conduct was inappropriate, Clark stated that he "meant nothing by it and was just joking around." Clark additionally stated that although he knew that the girls told him repeatedly to stop the unwanted touching, he explained that he "zones out" and the girls' pleas to stop simply don't "register" with him.

{¶ 6} Clark was subsequently charged in six separate criminal complaints, each containing one count of sexual imposition corresponding to the six individual female

victims. At the conclusion of his jury trial on June 13, 2013, Clark was found guilty of one count of sexual imposition against the complainant, T.H. Clark was acquitted of the remaining five counts of sexual imposition. The trial court sentenced Clark to sixty days in jail with forty-five days suspended. Clark was placed on probation for one year, ordered to undergo a mental health assessment, and instructed to complete any recommended follow-up treatment. Clark was also designated a Tier I sex offender. The imposition of Clark's sentence was stayed pending the outcome of his appeal.

{¶ 7} It is from this judgment that Clark now appeals.

{¶ 8} Clark's first assignment of error is as follows:

"THERE WAS INSUFFICIENT EVIDENCE PRESENTED AT TRIAL TO SUPPORT A CONVICTION FOR SEXUAL IMPOSITION."

{¶ 9} In his first assignment, Clark contends that the State adduced insufficient evidence at trial to support his conviction for sexual imposition. Specifically, Clark argues that the evidence was insufficient to establish: 1) that the touching was for the purpose of sexual arousal or gratification in order to constitute "sexual contact" under R.C. 2907.01(B); 2) corroboration pursuant to R.C. 2907.06(B); and 3) that he knew his conduct would be offensive, or was reckless in that regard.

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense in order to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Ohio's sexual imposition statute, R.C. 2907.06(A)(1) provides, in part: "[n]o person shall have sexual contact with another, not the spouse of the offender, when [t]he offender knows that the sexual contact is offensive to the other person, *** or is reckless in that regard." Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, *buttock*, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). (Emphasis added.)

{¶ 12} Initially, we note that evidence was adduced from which the jury could have concluded that Clark had sexual contact with T.H. because there was undisputed evidence that he grabbed her buttocks with both hands. See R.C. 2907.01(B). Further, there was evidence that the sexual contact was made for the purpose of sexually arousing or gratifying Clark. The Ohio Revised Code does not define "sexual arousal" or "sexual gratification." *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 23. However, "R.C. 2907.01(B) 'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987). In addition, "[w]hile the purpose of sexual arousal or gratification is an essential element of the offense of *** sexual

imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification." *Gesell*, at ¶ 25. " '[T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision, the trier of fact may consider the type, nature, and circumstances of the contact, along with the personality of the defendant. From these facts, the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.' " *State v. Mundy*, 99 Ohio App.3d 275, 288-289, 650 N.E.2d 502, 510 (2d Dist.1994), quoting *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009, 1013 (9th Dist.1991).

{¶ 13}    In the instant case, sufficient evidence was adduced at trial whereby the jury could find that Clark's purpose in grabbing T.H.'s buttocks was for sexual gratification or arousal. Initially, we note that Clark limited his inappropriate touching to female students. Significantly, when Clark was accused of inappropriately touching his female classmates, it was almost always in an erogenous zone as defined in R.C. 2907.01(B). The evidence established that Clark grabbed T.H. when she had her back turned to him and was completely unaware of his intentions. Upon realizing what Clark had just done to her, T.H. yelled out and immediately left the classroom. T.H. testified that there was no history of touching or horseplay between she and Clark. Additionally, Clark admitted to both Schakat and Det. King that when he inappropriately touched the females, he "zones out" and the

girls' pleas to stop simply don't "register" with him. Det. King testified that Clark acknowledged that when he grabbed T.H.'s buttocks, he "went too far." The trier of fact was not required to accept Clark's explanation to Schakat and Det. King that he was merely "joking around." *State v. Bragg*, 2d Dist. Montgomery No. 19491, 2004-Ohio-659, at ¶ 11. Thus, we find that a rational trier of fact could conclude that Clark grabbed T.H.'s buttocks for sexual gratification.

{¶ 14} R.C. 2907.06(B) provides that "[n]o person shall be convicted of a violation of this section [Sexual Imposition] solely upon the victim's testimony unsupported by other evidence." Clark argues that the corroboration required by R.C. 2907.06(B) is not present in this case because there is no evidence that he knew that his conduct was either offensive to T.H., or that he was reckless in this regard.

{¶ 15} The Supreme Court of Ohio has addressed the corroboration requirement set forth in R.C. 2907.06(B) in *State v. Economo*, 76 Ohio St.3d 56, 666 N.E.2d 225 (1996). "Although one can make a reasoned argument that the corroboration required by the statute ought to touch upon the knowledge-that-ones-conduct-is-offensive element of Sexual Imposition, that argument was clearly rejected in *Economo*. The opinion in that case clearly holds that corroboration, which can be slight, need only touch upon any element of Sexual Imposition." *State v. Rossi*, 2d Dist. Montgomery No. 22803, 2009-Ohio-1963, ¶ 37.

{¶ 16} In *Economo*, the only evidence corroborating any element of the offense was that the alleged victim promptly reported the incident to the authorities, appeared to be upset, and did not want to be alone with the alleged perpetrator of the offense. These circumstances were deemed to constitute sufficient corroboration. In the instant case, T.H.

yelled loudly and stormed out of the classroom immediately after being grabbed on her buttocks by Clark. T.H.'s teacher, Ms. Cabaluna, testified that she heard a commotion and observed T.H. walk out of the classroom. Cabaluna further testified that T.H.'s face was "bright red," and she appeared very anxious. Cabaluna then followed T.H. into the hallway. Thereupon, T.H. informed Cabaluna that "[Clark] grabbed my butt."

{¶ 17} Upon being confronted by Cabaluna about the incident, Clark acknowledged that his behavior was inappropriate and stated that "I know; I get worked up, and I don't think about what I am doing." Moreover, Clark admitted that he grabbed T.H.'s buttocks when he was later confronted by Schakat about the incident. Clark also admitted to Det. King that he grabbed T.H.'s buttocks when he was interviewed at the Springfield Police Department. Lastly, we note that corroboration is a question of sufficiency to be determined by the trial court in considering a Crim. R. 29 motion for acquittal. Contrary to Clark's assertion, it is not a question of fact to be determined by the jury. *State v. Burns*, 2d Dist. Montgomery No. 24174, 2012-Ohio-2536, ¶ 29, citing *Economo*, 76 Ohio St.3d 56, 60.

{¶ 18} Lastly, the evidence adduced by the State was sufficient to establish that Clark knew that his conduct was offensive to T.H., or that he acted recklessly when he touched her inappropriately. A person acts "knowingly" when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. See R.C. 2901.22(B). A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." See R.C. 2901.22(C).

{¶ 19} At the time of the incident, Clark and T.H. had only known each other for

approximately three weeks. Moreover, there was no history of flirting or touching between the two of them that would provide Clark with a reasonable basis for believing that grabbing T.H.'s buttocks would be acceptable to her. After grabbing T.H.'s buttocks and witnessing her instant, volatile reaction, Clark admitted that he "went too far" and that he does not "think about what he is doing." In *State v.Messer*, 2d Dist. Montgomery No. 23779, 2011-Ohio-129, the defendant, who was convicted of sexual imposition and sexual battery, told a detective that "he knew what he did was wrong" after engaging in sexual activity with the victim. Accordingly, we find that the jury could have reasonably concluded that Clark knew the sexual contact was offensive to T.H., or that he acted recklessly in regards to whether it was offensive to her. Accordingly, we conclude that the trial court did not err when it overruled his Crim. R. 29 motions for acquittal made at the close of the State's case.

**{¶ 20}** Clark's first assignment of error is overruled.

**{¶ 21}** Clark's second assignment of error is as follows:

"THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE BY THE DEFENSE THAT THE DETECTIVE MISSTATED WHAT CONSTITUTES SEXUAL IMPOSTION, PROVIDING THE JURORS WITH CONFLICTING INSTRUCTIONS OF LAW AS TO THE CRIME FOR WHICH APPELLANT WAS CHARGED."

**{¶ 22}** In his second assignment, Clark argues that the trial court erred when it limited defense counsel from cross-examining Det. King regarding his purported misstatement of the elements of R.C. 2907.06(A)(1) during his recorded interview of the appellant. During the interview, Det. King told Clark that the offense of sexual imposition was the unwanted touching of the erogenous zones of another. When defense counsel

attempted to cross-examine Det. King regarding this purported misstatement of law, the trial court sustained the State's objection and excluded the testimony. Thus, Clark asserts that the trial court denied him the opportunity to correct Det. King's purported mischaracterization, and as a result, the jury was likely confused, thereby prejudicing him.

{¶ 23} Initially, we note that counsel failed to object to the admission of the recorded interview conducted by Det. King, wherein he made the alleged misstatement of law. Absent an objection or a request for a limiting instruction, Clark has waived all but plain error. An appellate court has the discretion to notice plain error under Crim. R. 52(B) "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E2d 804 (1978), ¶ 3 of the syllabus. Plain error does not exist unless, but for the error, the outcome of the proceedings would have been different. *State v. Moreland*, 50 Ohio St.3d 58, 552 N.E.2d 894 (1990).

{¶ 24} The following exchange occurred during the cross-examination of Det. King:

Defense Counsel: Okay. Now when you interviewed Mr. Clark you kind of explained to him what he was charged with and what the sexual imposition was correct?

Det. King: Yes sir.

Q: And were you truthful when you told him that?

A: Yes sir.

Q: Are you familiar with the statute that you were quoting?

A: Yes I'm familiar with…..

Q: Okay.

A: ….the sexual imposition statutes.

Q: And you said that it's illegal to touch the erogenous zone of another, is that what you told Mr. Clark?

A: I, among other things, yes sir.

Q: Okay and I assume you're familiar with the law?

A: Yes sir.

Q: Okay. I have before……….

The State: I don't know what he's showing him.

Defense Counsel: Oh I'm sorry, the statute. I apologize.

The Court: May I may I look?

Defense Counsel: Could you read for me the statute for sexual imposition according to the Ohio Revised Code?

The State: I'm going to object. The instruction should come from the Court I would think.

Defense Counsel: The instructions already came from the witness. I need to clarify Your Honor.

The Court: Well if I could have counsel approach.

*** SIDEBAR

The Court: What's the purpose of this?

Defense Counsel: The purpose Your Honor is he says it's just unwanted touching [of] the erogenous zone. It's not sexual contact. And I think that's a key distinction.

The Court: Uh but it's the Court's function to advise the jury (inaudible) what what (inaudible).

Defense Counsel: Because he's a very credible witness Your Honor and they can assume that he knows and that's the reason why.

The Court: You're saying that he misquoted the statute.

Defense Counsel: Yes.

The Court: *** why is that relevant?

Defense Counsel: Because Your Honor it's relevant because if he didn't violate the statute then he shouldn't be charged.

The State: Well we're a little late for that but (inaudible).

Defense Counsel: Well I attempted to do that in my opening.

The State: Instructions of law come from the Court. They're finders of fact whether it meets the of the [sic] law is given to them. They're the finders of fact.

The Court: The objection's sustained.

*** END OF SIDEBAR

Defense Counsel: Isn't it true that sexual contact is required? Is that permittable [sic] Your Honor?

The Court: Well you asked a question so it's pending.

Det. King: Yes sir.

Defense Counsel: Okay. And what is your definition of sexual contact?

The State: Objection.

Defense Counsel: …..as an officer?

The Court: *Sustained. The Court will instruct the jury as to the law that it must apply to the facts as they find them to be when they are deliberating.* (Emphasis added).

**{¶ 25}** Upon review, we find that Clark's argument that he was prevented from cross-examining Det. King regarding his alleged misstatement of law misconstrues the record. The record establishes that defense counsel was properly prevented from introducing a copy of R.C. 2907.06 into evidence through Det. King's reading of the statute to the jury. Defense counsel was also properly prevented from questioning Det. King regarding his personal definition of "sexual contact." This line of questioning was improper, and the trial court did not err when it sustained the State's objections.

**{¶ 26}** Instructions regarding the pertinent law must come from the court. We note that Clark does not argue on appeal that the trial court's instructions to the jury regarding the necessary elements of sexual imposition were incorrect. We further note that it is generally accepted that the jury is presumed to follow the instructions of law given to it by the court. *State v. Raglin*, 83 Ohio St.3d 253, 264, 699 N.E.2d 482, 492 (1998). If defense counsel had simply wanted to emphasize that Det. King had not advised Clark of all of the elements of

sexual imposition, he was free to cross-examine Det. King regarding what he said, or more specifically, what was omitted during the interview regarding sexual gratification. However, permitting Det. King to read R.C. 2907.06 to the jury or testify regarding his own definition of "sexual contact" would have invaded the province of the trial court to instruct on the law applicable to the case, and would therefore have been error.

{¶ 27}   Clark's second assignment of error is overruled.

{¶ 28}   Clark's third and final assignment of error is as follows:

"APPELLANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO FILE A MOTION TO SUPPRESS, WHICH LIKELY WOULD HAVE RESULTED IN SUPPRESSION OF HIS FORCED INCULPATORY STATEMENTS."

{¶ 29}   In his third and final assignment, Clark argues that his trial counsel was ineffective for failing to file a motion to suppress the statements he made to Det. King during the recorded interview. Specifically, Clark argues that because he was improperly advised of the elements of sexual imposition by Det. King, his inculpatory statements were induced by misstatements of law and would have been suppressed had his counsel properly filed a motion to suppress.

{¶ 30}   To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   Trial counsel is

entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook* , 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶ 31}** "The failure to file a suppression motion is not per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52, 2000-Ohio-448. Rather, trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused Defendant prejudice; that is, when there is a reasonable probability that, had the motion to suppress been filed, it would have been granted." (Citations omitted.) *State v. Wilson,* 2d Dist. Clark No. 08CA0445, 2009-Ohio-2744, ¶11. See, also, *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

**{¶ 32}** Clark argues that if Det. King had properly informed him of all of the elements of the offense of sexual imposition, he would not have admitted to grabbing T.H.'s buttocks. Thus, Clark asserts that his inculpatory admission to Det. King could not have then been used to corroborate T.H.'s testimony regarding the incident. However, Clark ignores the fact that prior to making admissions to Det. King, he had already admitted to Cabaluna and Schakat that he had grabbed T.H.'s buttocks, an act for which he received a one-day in-school suspension. Clark also acknowledged to Schakat that he did "not hear no or stop" when he is in a "zone." On the date of the incident involving T.H., Clark told Cabaluna, "I know I get worked up." Clark never denied touching T.H.'s buttocks, and his

defense at trial merely consisted of the assertion that he was "just joking" and "meant nothing by it." Accordingly, Clark was not prejudiced by counsel's failure to file a motion to suppress the statements he made to Det. King since he had already admitted to the inappropriate conduct prior to the interview.

{¶ 33} Additionally, we note that defense counsel's failure to file a motion to suppress Clark's statements to Det. King may have been a matter of reasonable trial strategy, which does not constitute deficient performance. *State v. King*, 2d Dist. Montgomery No. 18463, 2002-Ohio-2929. Simply put, filing a motion to suppress is not without risks, and the likelihood of success of such a motion was not a given in this case. *State v. Brown*, 115 Ohio St.3d 55, 69, 2007-Ohio-4837, 873 N.E.2d 858.

{¶ 34} Moreover, even if defense counsel had filed a motion to suppress Clark's inculpatory statements and the trial court had granted the motion, we cannot find that the result of the trial would have been any different because the State adduced a substantial amount of evidence establishing Clark's guilt with respect to the incident involving T.H. Accordingly, given the substantial amount of additional testimony from Cabaluna and Schakat which corroborated T.H.'s testimony, aside from Clark's statements to Det. King, we cannot say that had defense counsel filed a motion to suppress, there is a reasonable probability that Clark would have been acquitted.

{¶ 35} Clark's third and final assignment of error is overruled. Judgment affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Marc T. Ross
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Thomas E. Trempe