OPINION
{¶ 1} Defendant-appellant Nicholas Rossi appeals from his conviction and sentence for Sexual Imposition and for Public Indecency. Rossi contends that his conviction for Sexual Imposition is not supported by corroboration of the victim's testimony, as required by R.C. 2907.06(B), and that he did not receive effective *Page 2 
assistance from his trial counsel.
 {¶ 2} We conclude that Rossi's Sexual Imposition conviction is sufficiently corroborated, and that the record does not support his contention that his trial counsel was ineffective. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} M. G. testified at Rossi's trial. Rossi did not testify, but Sinclair Community College Police Officer Kenneth Quatman testified concerning a statement that Rossi made to Quatman during Quatman's investigation of this incident.
 {¶ 4} M. G. and Rossi were both students at Sinclair. They met on the internet, communicating on My Space. They arranged to have lunch together at the Sinclair cafeteria in late January, 2008, their first physical meeting. Also present at this lunch were two male acquaintances of M.G., including an ex-boyfriend, and a girl from Rossi's French class. According to M.G., she told Rossi that she wanted to be friends, but did not indicate a romantic interest, or an interest in Rossi as a potential boyfriend.
 {¶ 5} The following testimony is worth quoting:
 {¶ 6} "Q. OK[,] were you showing nude pictures of yourself to him [Rossi] at the lunch table?
 {¶ 7} "* * * *
 {¶ 8} "A. There was one on my phone which he looked at, but I wasn't like[,] hey[,] look at this. He just kind of find it on his own.
 {¶ 9} "Q. He was looking at your cell phone and looked —
 {¶ 10} "A. Yeah. *Page 3 
 {¶ 11} "Q. But you weren't flashing it to the table?
 {¶ 12} "A. No.
 {¶ 13} "Q. And you were looking through the pictures on his cell phone too, right? And taking pictures of (inaudible)?
 {¶ 14} "A. Yeah, but he had much less exciting ones I guess.
 {¶ 15} "Q. But you didn't have any problem him looking through your nude pictures?
 {¶ 16} "* * * *
 {¶ 17} "A. I don't think looking at a nude picture of me gives him any permission to ignore me saying[,] hey[,] don't do that [evidently referring to what occurred later]. It doesn't, I don't see how you really link the two together. If you look at a naked picture of Britney Spears, that doesn't mean[,] hey[,] go dry hump her."
 {¶ 18} After lunch, Rossi asked M. G. if he could walk her to her next class, and she agreed. When they arrived a few minutes early, she allowed herself to be led down some stairs to a place that is not usually frequented by the public. There, Rossi kissed M.G. "aggressively." On cross-examination, M. G. acknowledged that at first she kissed Rossi back, "just to get him off me."
 {¶ 19} "Q. But you testified in direct examination that you turned your head when he kissed you.
 {¶ 20} "A. It was a little bit of both. Sometimes I'd kiss him, make him, making him think oh maybe he'll go away [sic] and then sometimes I'd just be like uh no."
 {¶ 21} What happened next is most clearly described in the following testimony:
 {¶ 22} "A. From then forward he kind of pushed me up against the back wall, *Page 4 
started kind of dry humping me I guess, pushing his genitals up on mine and I'm still kind of like resisting, not letting him kiss my lips and he's just kind of kissing and biting my neck and I'm just kind of like hey it's past two, let me go, let me leave and he's just kind of like no and he kept me down there. And as time went on I guess he got more sexually frustrated or whatever and he started feeling my chest, feeling my genitals and I'm just like hey let me go back to class, this is my major, this is an important class, I need it to graduate. It was a test that day, it was one of my final exams and he didn't really seem to care. He just went kind of like oh let me finish a couple more minutes. I was kind of like let me leave, let me leave and he's like no. And eventually he unzipped his pants, revealed his penis to me and I'm just kind of like oh that's nice and I was scared because since he wouldn't let me leave I'm just kind of like oh I better do what he says or he'll rape me, he'll hurt me. You know, I'm a little girl, I'm like ninety pounds. I can't over power [sic] anybody. I was scared and he would not let me leave so I was just giving into what he was saying cause I was really scared.
 {¶ 23} "Q. Giving in, what does that mean?
 {¶ 24} "A. Just letting him do what he wanted.
 {¶ 25} "Q. And what did he do?
 {¶ 26} "A. Well eventually he masturbated on the wall, but until that he was pretty much just continually dry humping me and kissing me."
 {¶ 27} Subsequent questioning clarified that M. G. was testifying that when Rossi touched her breasts, he had his hands inside M. G.'s clothing.
 {¶ 28} M. G. then attended her next class. When she walked from that class to *Page 5 
her next class after that, she encountered Rossi, who tried to apologize. M. G. then went to her next class, which began at 4:00. The class immediately following the assault began at 2:00. The 4:00 class was supposed to end at 5:15, but M. G. left at about 4:45, and reported the incident to the Sinclair police. Kenneth Quatman took her report.
 {¶ 29} Quatman also talked to Rossi. Rossi admitted to having ejaculated in a stairwell (although Quatman found no physical evidence to confirm that). Rossi admitted to all the physical contact that M. G. alleged, but that she, M. G., was the "aggressor."
 {¶ 30} Quatman testified that when he interviewed her, M. G. was "a little bit upset," although not crying, and was "nervous and jittery."
 {¶ 31} Rossi was charged with Sexual Imposition and Public Indecency. Following a bench trial, he was convicted on both charges, and sentenced accordingly. From his conviction and sentence, Rossi appeals.
 II {¶ 32} Rossi's First Assignment of Error is as follows:
 {¶ 33} "THE TRIAL COURT ERRED BY FINDING DEFENDANT GUILTY OF SEXUAL IMPOSITION WITHOUT CORROBORATING EVIDENCE AS REQUIRED BY [R.C.] 2907.06(B)."
 {¶ 34} Sexual Imposition is proscribed by R.C. 2907.06(A), which prohibits having sexual contact with another person, not the spouse of the offender, "when the offender knows that the sexual contact is offensive to the other person, * * *, or is reckless in that regard." In this case, there is no dispute that the physical touching between Rossi and M. G. constituted sexual contact. The dispute centered over who initiated the contact, *Page 6 
and whether Rossi knew, or should have known, that it was offensive to M. G. M. G.'s testimony, if believed, was sufficient to establish that Rossi initiated the contact, and, if believed, would lead a reasonable finder of fact to find that Rossi either knew that his conduct was offensive to M. G., or was reckless in that regard.
 {¶ 35} R.C. 2907.06(B) provides: "No person shall be convicted of a violation of this section [Sexual Imposition] solely upon the victim's testimony unsupported by other evidence."
 {¶ 36} Rossi contends that the corroboration required by R.C. 2907.06(B) is not present in this case, because without M. G.'s testimony, there is no evidence that Rossi knew that his conduct was either offensive to M. G., or that he was reckless in this regard.
 {¶ 37} The Supreme Court of Ohio has addressed the corroboration requirement set forth in R.C. 2907.06(B) in State v. Economo (1996),76 Ohio St.3d 56. Although one can make a reasoned argument that the corroboration required by the statute ought to touch upon the knowledge-that-ones-conduct-is-offensive element of Sexual Imposition, that argument was clearly rejected in State v. Economo, supra. The opinion in that case clearly holds that corroboration, which can be slight, need only touch upon any element of Sexual Imposition.
 {¶ 38} In State v. Economo, the only evidence corroborating any element of the offense was that the alleged victim promptly reported the incident to the authorities, appeared to be upset, and did not want to be alone with the alleged perpetrator of the offense. These circumstances were deemed to constitute sufficient corroboration. In the case before us, M. G. reported the alleged offense within three hours of its *Page 7 
occurrence to appropriate authorities, and appeared to be upset. Both of these circumstances are similar to the circumstances deemed to constitute sufficient corroboration in State v. Economo, supra.
 {¶ 39} But in the case before us, we also have Rossi's admission to the police officer that he had sexual contact with M. G. This is an important element of the offense, and Rossi's admission corroborates M. G.'s account.
 {¶ 40} Rossi's First Assignment of Error is overruled.
 III {¶ 41} Rossi's Second Assignment of Error is as follows:
 {¶ 42} "THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 43} Rossi first contends that his trial counsel failed to put on a defense, because she did not call any witnesses on his behalf. M. G. did testify that a male did pass them on the stairwell at one point, but she was unable to identify him, and there is nothing in this record to reflect that this witness: (1) could have been identified and located; or (2) would have had any testimony helpful to Rossi.
 {¶ 44} Rossi's main contention is that his trial counsel was ineffective for having failed to call him to testify in his own defense. Rossi attaches an affidavit to his brief in which he avers what he would have said, had he been called upon to testify, but on appellate review we are, of course, limited to the record before the trial court. There is nothing in the record, other than Officer Quatman's testimony concerning the statement Rossi made to him, which was received in evidence, from which we can determine what *Page 8 
Rossi might have testified, or how helpful his testimony may have been.
 {¶ 45} Furthermore, there is nothing in this record from which we can determine that trial counsel prevented Rossi from testifying, as Rossi claims.
 {¶ 46} Finally, a viable, albeit unsuccessful, defense was presented to the trial court that Rossi had no reason to believe that his physical advances were unwelcome, until they were rebuffed. In presenting this defense, he had the benefit of the admission in evidence of his statement to Officer Quatman, which set forth his version that M. G. was the initiator of the sexual contact (or "agressor"), without the disadvantage of having to subject his version of events to cross-examination, as would have been the case had he testified in his defense. This is a common tactic in criminal defense, and there is nothing in this record from which we can find that trial counsel was ineffective in having followed this tactic, or in having recommended it to Rossi.
 {¶ 47} Rossi also argues that his trial counsel was ineffective for having failed to move for a judgment of acquittal, under Crim. R. 29. Rossi rested without presenting evidence, so there was only one point at which a Crim. R. 29 motion could have been made — at the close of the State's evidence, when all the evidence was in. If that evidence, when viewed in a light most favorable to the State, were deemed by us to be insufficient to support a conviction, either for Sexual Imposition or for Public Indecency, we should have no hesitancy in reversing the conviction found unsupported by the evidence, and in discharging Rossi as to that offense, despite the fact that counsel did not make a Crim. R. 29 motion. But we find the evidence in this record ample to support both convictions.
 {¶ 48} Rossi's Second Assignment of Error is overruled. *Page 9 
 IV {¶ 49} Both of Rossi's assignments of error having been overruled, the judgment of the trial court is Affirmed.
FROELICH, J., concurs.