[Cite as *State v. Shah*, 2014-Ohio-1449.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.     25855 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No.   2012-CRB-7728 |
| v. | : | |
| | : | |
| MAYAN SHAH | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of April, 2014.

. . . . . . . . . . .

SHAUNA HILL, Atty. Reg. No. 0074569, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 130 West Second Street, Suite 2150, P.O. Box 1262, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Mayan Shah, appeals from his conviction and sentence,

following a jury trial, on one count of Sexual Imposition. Shah contends that the trial court erred in denying his motion in limine, and in permitting other acts evidence at trial. Shah further contends that the State presented insufficient evidence at trial for a conviction.

{¶ 2}    We conclude that the trial court did not abuse its discretion in denying the motion in limine. Any delay in disclosing a state witness was not the State's fault, and Shah did not show prejudice, because he elected not to ask for a continuance. The testimony of the witness was also properly admitted under Evid.R. 404(B).

{¶ 3}    We further conclude that the judgment was supported by sufficient evidence, and was not against the manifest weight of the evidence. The victim's testimony was supported by sufficient corroboration, and Shah's voluntary intoxication could not be taken into consideration to determine the existence of a mental state that is an element of the crime that was charged. Accordingly, the judgment of the trial court will be affirmed.

I.    Facts and Course of Proceedings

{¶ 4}    In September 2013, the State filed a complaint in Dayton Municipal Court, alleging that Mayan Shah had committed Sexual Imposition in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor. The charge against Shah arose from events that occurred at the Ale Fest, which was held on August 25, 2012, at Carillon Park in Dayton, Ohio. For a flat fee, patrons at the Ale Fest received a small glass that could hold two to three ounces of liquid, and could obtain ale from any exhibitor. There was no limit on the number of times an exhibitor could be visited, and patrons could drink as much as they wished.

{¶ 5}    Shah was one of the patrons of the Ale Fest. Shah had been in the Air Force

since 1989, and had achieved the rank of colonel. On that day, Shah came to the festival alone, and consumed his normal amount of drink, which was about 30 to 45 fluid ounces. According to Shah, he did not realize that ale was much more potent than beer.

{¶ 6} M.P., her brother, and a mutual friend also attended the Ale Fest.[1] M.P. and the rest of her party arrived near the start of the festival and left between 4:00 and 4:30 p.m. They were being picked up by M.P.'s sister-in-law, and went to a parking lot to the right of the structure that contained the Carillon bells to wait for their ride. M.P.'s feet were bothering her, so she told her brother and friend that she was going to go sit by a tree. M.P. had on a sundress and sat down with her knees together. A man, later identified as Shah, was directly in front of M.P., and was standing. M.P. had never seen him before. M.P. noticed Shah immediately because he was in her line of sight and he was looking at her. Shah did not say anything at that point, but continued to stand and stare.

{¶ 7} Because M.P. felt uncomfortable, she averted her eyes. When she glanced back, Shah was still staring, and he began to make a hand movement. His palms were touching and he was slowly moving them outward while staring at her. M.P.'s first reaction was that Shah wanted her to spread her knees apart, but she dismissed that because she did not know what he was doing. Out of her peripheral vision, she continued to see Shah making that motion.

{¶ 8} M.P. described Shah as looking "out of it," and more than drunk. He was standing, making a strange gesture. M.P. thought Shah might be using sign language, so she told him that she did not know what he was saying. However, she did not believe he heard her. M.P. then made a gesture, and Shah walked over immediately. He kneeled down, with his face

---

[1] For privacy purposes, initials will be substituted for the names of the witnesses and the victim in this case.

in close proximity to hers, and asked if she had a boyfriend. After M.P. said that she had a boyfriend, Shah immediately said, "Do you want me to eat you out." June 6, 2013 Trial Transcript, Volume II, p. 180.

{¶ 9}  M.P. was very scared, immediately said no thank you, and went over to her brother. After she told him what Shah had said, their group moved to another part of the parking lot. M.P.'s sister-in-law arrived a few minutes later to pick them up, and they left. M.P. never went to the police about the incident, nor did she file any charges.

{¶ 10}  On the same day, the victim, A.P., and two other women, Y.M. and S.P., were volunteering at the Ale Fest. All three women were employed as servers or hostesses at a local bar/restaurant, and they had volunteered to serve drinks for that bar/restaurant at the festival. They were dressed in the uniforms they normally wore to work, which consisted of tank tops, middle-length plaid skirts, and knee-high plaid socks or tights. A.P.'s boyfriend, L., was at the festival as a patron.

{¶ 11}  The festival lasted from 2:00 p.m. until 5:00 p.m. After finishing work and talking with some friends, A.P., L., Y.M., and S.P. left the festival at around 5:30 p.m. On the way to the parking lot, they decided to stop at a large tree and take pictures. Y.M. stood on a stump about a foot and a half off the ground, on the left side. A.P. and S.P. were standing in a V-shaped area of the tree, about two to three feet off the ground. A.P. was in the middle, between Y.M. and S.P., and L. was taking pictures of them.

{¶ 12}  While the pictures were being taken, S.P. felt a breeze by her skirt and realized that someone behind her had lifted up her skirt. She was in shock, and asked the person why he was doing that. She looked around and saw Shah. She asked Shah not to do that again. Shah

just stood there, with a blank expression. S.P. turned around to pose for the picture and, out of her peripheral vision, saw something go past her and reach towards A.P. She saw Shah's arm and saw it go under A.P.'s skirt. At that point, S.P. slapped Shah's arm, swore at him, and told him not to do it again.

{¶ 13} A.P. stated that she felt Shah go up her skirt and touch her vagina. She could feel his fingers or his hand, and felt movement of his hand. She was in shock and felt really violated. Both S.P. and Y.M. told Shah to get away immediately. Shah did not have any reaction to what the women said. He stood there, without an expression or a response, and then walked away.

{¶ 14} After Shah walked away, A.P., L., S.P., and Y.M. walked to their car. However, they saw children in the area where Shah was walking, and decided to tell the authorities what had happened. They found Dayton Police Officer, Johnny Watts, who was working at the festival, and told him that Shah had touched them inappropriately. They pointed out Shah, and Watts then went to speak with Shah. Watts indicated that Shah said very little about the incident. Shah had been drinking and seemed somewhat confused. Shah refused or was unable to give the police his address, and gave them a post office box number instead. After speaking with a supervisor, the police transported Shah to Wright Patterson Air Force Base (WPAFB), and released him to the military police.

{¶ 15} The Sexual Imposition charge was filed against Shah a few weeks later, on September 13, 2012. After some delays, the case was scheduled for trial on June 6, 2013. In the meantime, M.P. (the woman from the parking lot) accidentally encountered Shah at WPAFB, where they both worked. M.P. was a civilian worker at WPAFB. A few days after the Ale Fest,

M.P. was assigned to a special project and was in a different part of the building than where she normally worked. M.P. was assisting job candidates, and spent time in the hallway at various points in the day.

{¶ 16} During the afternoon, M.P. saw Shah walk by, and recognized him as the man who had accosted her at the festival. They did not speak, and Shah walked into a door close to where M.P. was standing. Shah was in uniform. Later that afternoon, Shah walked out and saw M.P. standing there. Shah came up to her and asked if she needed help. This was not an unusual occurrence at WPAFB, as military members are supposed to question why people in civilian dress are standing around. The encounter felt very normal, and had M.P. not had a previous encounter with Shah, there would have been no issue.

{¶ 17} M.P. looked at Shah's name tag, and then looked Shah up on the global address directory. She discovered that Shah was a colonel. She told a co-worker about the situation and kept Shah's name for future reference in case there were any issues at work.

{¶ 18} Apparently, the media only became aware of Shah's case shortly before the trial that was scheduled for June 6, 2013. M.P. learned of the case through an article in the Dayton Daily News, and contacted the authorities. On June 4, 2013, the Dayton City prosecutor learned that M.P. was a potential witness, and notified Shah's counsel that afternoon. The prosecutor and Shah's counsel then interviewed M.P. together on June 5, 2013. At the urging of Shah's counsel, the court held a hearing the same day to address a motion in limine seeking to preclude M.P.'s testimony. At the hearing, the parties outlined the situation, and Shah objected to M.P.'s testimony on two grounds: (1) that the late disclosure of the witness hampered the defense's ability to prepare for trial; and (2) that the testimony should be excluded under Evid.R. 404.

{¶ 19}    When the hearing began, the trial court inquired about whether the defense would be requesting a continuance.  After hearing the arguments of the parties, the court concluded that the prosecution was not at fault for the late disclosure.  The court also concluded that M.P.'s testimony was admissible under Evid.R. 404(B), on the issues of motive and preparation, and on Shah's state of mind.  At that point, the court asked defense counsel if he intended to ask for a continuance.  Because Shah was not present at the hearing, defense counsel told the court that he would check with Shah and would let the court and prosecution know what he wanted to do.  The record contains no further discussion about a continuance, and the trial proceeded the following day, as scheduled.

{¶ 20}    After hearing the evidence, the jury found Shah guilty, as charged.  The court then sentenced Shah to 60 days in jail, with 60 days suspended, 180 days of electronic home detention, with release for work, three years of intensive supervised probation, and other community control sanctions.  The court also required Shah to register as a Tier I sex offender.  Shah now appeals from his conviction and sentence.

## II.   Did the Trial Court Err in Denying Shah's Motion in Limine?

{¶ 21}    Shah's First Assignment of Error states that:

The Trial Court Erred in Denying Appellant's Motion in Limine, Permitting Other Acts Evidence at Trial that Was Inadmissible.

{¶ 22}    Under this assignment of error, Shah contends that the trial court erred in overruling the motion in limine and allowing M.P.'s testimony at trial.   Shah first argues that the late disclosure did not provide adequate time to investigate M.P. as a witness.   In this regard, Shah stresses the fact that, according to M.P., other witnesses were present when M.P. and Shah

were in the parking lot. Shah also argues that M.P. could potentially have been biased against Shah in some way because they worked in close proximity to each other.

**{¶ 23}** The purpose of Crim.R. 16 is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). Under this rule, parties are required to disclose various information to each other, including witness lists. *See*, *e.g.*, Crim.R. 16(I). If the court finds that a party has failed to comply with Crim.R. 16, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

**{¶ 24}** "Appellate courts review allegations of noncompliance with criminal discovery rules under the abuse of discretion standard." *State v. Adams*, 7th Dist. Mahoning No. 00 CA 211, 2006-Ohio-1761, ¶ 40, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). Recently, the Supreme Court of Ohio noted that:

> In *Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689, we established three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution. The three *Parson* factors a judge should consider are (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *State v. Darmond*, 135 Ohio St.3d 343,

2013-Ohio-966, 986 N.E.2d 971, ¶ 35, citing *Parson* at syllabus.

{¶ 25}  After reviewing the record, we find that the trial court did not abuse its discretion.  First, there was no willful violation, and no violation at all, really.  As the trial court noted, the prosecution was not at fault for the late disclosure.  The prosecution disclosed M.P. to the defense the same day that it learned of her identity, and both parties interviewed the witness at the same time.  Further, with regard to the two remaining factors, M.P. testified that her brother and friend were watching for their ride and were not with her when the incident occurred.  Thus, they would have had nothing to contribute, other than to possibly verify her reaction after the fact.  M.P. also indicated that she had never met  Shah before, and only accidently met him at work after the incident.  Thus, the record offers no indication that there was anything pertinent to discover.

{¶ 26}  However, even if these facts were otherwise, Shah has failed to establish prejudice, because he elected not to ask for a continuance.  The trial court offered this option twice as a possibility, but Shah elected to continue with the trial as scheduled.  Accordingly, Shah cannot now complain about any potential prejudice caused by the late disclosure.

{¶ 27}  Shah's second argument is that the motion in limine should have been granted because M.P.'s testimony was not admissible under Evid.R. 404(B).  According to Shah, his interaction with M.P. was unrelated to the victim's allegation, and the evidence of the interaction was unduly prejudicial.  In contrast, the State contends that the evidence was properly admitted as proof of intent or motive.

{¶ 28}  Evid. R. 404(B) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 29} "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. " 'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.' " *Id.* at ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 30} In arguing that the "other acts" evidence was improperly admitted, Shah relies on *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317. In *Shaw*, we held that the trial court abused its discretion by admitting an "extensive amount of 'other acts' evidence, particularly since the court gave no limiting instruction regarding that evidence." *Id.* at ¶ 9. *Shaw* is distinguishable, however, due to the extensive and repeated testimony allowed in that case about years of abuse that was alleged to have occurred multiple times each week regarding each of the defendant's three daughters, when the defendant was only charged with fifteen counts of Rape and ten counts of Sexual Battery. *Id.* at ¶ 11-12 and 21. In addition, we relied on the

State's failure to provide the trial court with a "proper justification for the 'other acts' evidence * * *." *Id.* at ¶ 15.

**{¶ 31}** In the case before us, the State presented a minimal amount of evidence about an incident that occurred very shortly before the alleged crime. This was appropriate, because of the State's burden of proof, and because Shah placed his state of mind, or purpose, at issue.

**{¶ 32}** Shah was charged with having violated R.C. 2907.06(A)(1), which provides that:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

**{¶ 33}** "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶ 34}** At trial, the defense theory was that Shah was too intoxicated to form the purpose of sexual gratification. June 6, 2013 Trial Transcript, Volume III, pp. 275-279. Because Shah placed his ability to form a purpose of sexual gratification in question, the State was entitled to present evidence indicating that a very short time before the crime, Shah had approached another woman for the purpose of sexual gratification. Furthermore, the State was

also required to prove that sexual gratification was part of the crime.

{¶ 35} In *State v. Burson*, 38 Ohio St.2d 157, 311 N.E.2d 526 (1974), the Supreme Court of Ohio noted that "[t]he other acts of the defendant must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant in showing the defendant acted in the absence of mistake or accident." *Id.* at 159.

{¶ 36} In a situation similar to the present, we found no error in the admission of evidence relating to the defendant's implied sexual activity with another female near the time of an alleged crime, when the charged crime required the State to prove that the defendant "acted with a 'sexual motivation.' " *State v. Johnson*, 2d Dist. Montgomery No. 23508, 2011-Ohio-1133, ¶ 45. In this regard, we commented that:

> The fact that, two hours after he had asked D.W., a twelve-year old girl, to
> "come here, little girl," while standing on the porch of his house, Defendant was
> found inside the house with another young female and in a state of sexual arousal,
> is probative of the allegation that Defendant acted with a sexual motivation in his
> encounter with D.W. Any dissimilarities in the two episodes goes to the weight
> of the other act evidence admitted, not its admissibility. *Id*. at ¶ 56.

{¶ 37} Accordingly, the trial court did not abuse its discretion in overruling the motion in limine and in allowing M.P.'s testimony.

{¶ 38} Shah's final argument is that the trial court committed reversible error in failing to instruct the jury that M.P.'s testimony was for a limited purpose. In this regard, Shah relies on

*Shaw*, as well as other decisions holding that a limiting instruction should be given.

{¶ 39}    As a preliminary matter, we note that Shah failed to request a limiting instruction at trial, and has, therefore, waived all but plain error.    *State v. Moore*, 2d Dist. Greene No. 2010 CA 13, 2011-Ohio- 636, ¶ 23.    We stated in *Moore* that:

>          Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Herrera*, Ottawa App. No. OT–05–039, 2006-Ohio-3053.    In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise.    *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.    The Supreme Court of Ohio has held that, when the defense fails to request a limiting instruction on other acts evidence, the trial court's failure to give such an instruction is not plain error if "[n]othing suggests that the jury used 'other acts' evidence to convict [the defendant] because [he] was a bad person."    *State v. Perez*, 124 Ohio St.3d 122, 920 N.E.2d 104, 2009-Ohio-6179, ¶ 136, citing *State v. Diar*, 120 Ohio St.3d 460, 900 N.E.2d 565, 2008-Ohio-6266, ¶ 91, citing *State v. Grant* (1993), 67 Ohio St.3d 465, 472, 620 N.E.2d 50.    The record of this case in no way suggests that the jury relied on the other acts evidence to convict Moore.    Thus, we conclude that the trial court's failure to give a limiting instruction related to the prior bad acts was not plain error.    *Moore* at ¶ 24.

{¶ 40}    Likewise, in the case before us, there is no indication that the jury used the other acts evidence to convict Shah because he was a bad person, and the record does not suggest that the jury relied on the other acts evidence to convict Shah.    The State presented evidence that

Shah lifted up A.P.'s skirt after he had previously lifted up another woman's skirt and had been told to stop, and that Shah placed his hand or fingers on A.P.'s vagina. It is hard to imagine what purpose was involved in this act, other than sexual gratification.

{¶ 41} Accordingly, Shah's First Assignment of Error is overruled.

III. Did the State Present

Sufficient Evidence to Support a Conviction?

{¶ 42} Shah's Second Assignment of Error states as follows:

There Was Insufficient Evidence Presented at Trial to Support a Conviction.

{¶ 43} Under this assignment of error, Shah contends that the trial court erred in failing to grant his Crim.R. 29 motion for acquittal, because there was no evidence of sexual gratification, and there was insufficient corroboration to convict him of the crime. Shah also includes what appears to be a manifest weight challenge, even though he did not specifically state this in his assignment of error.

{¶ 44} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal

conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Cherry* at ¶ 9.

{¶ 45} In contrast, "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 46} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 47} After reviewing the entirety of the record, we find that the conviction is not

against the manifest weight of the evidence, and is, therefore, also supported by sufficient evidence. For the reasons previously mentioned, we reject Shah's claim that there is no evidence of sexual gratification. Shah also argues that there was no evidence of sexual contact, i.e., the touching of an erogenous zone. To the contrary, A.P. testified that Shah placed his fingers or his hand on her vagina, and that she could feel movement of his hand. The pubic area is included in R.C. 2907.01(B) as an "erogenous zone."

{¶ 48} In arguing that the evidence was insufficient, Shah also contends that the State failed to present corroborating evidence, as required by R.C. 2907.06(B), because no one besides A.P., the victim, witnessed the touching.

{¶ 49} R.C. 2907.06(B) states that "No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." The Supreme Court of Ohio stressed long ago that "[t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *State v. Economo*, 76 Ohio St.3d 56, 666 N.E.2d 225 (1996), syllabus.

{¶ 50} In *State v. Rossi*, 2d Dist. Montgomery No. 22803, 2009-Ohio-1963, the only two parties present at the time of the alleged sexual imposition were the defendant and the victim. *Id*. at ¶ 18-27. However, we rejected the defendant's claim of lack of sufficient corroboration, noting that:

In *State v. Economo*, the only evidence corroborating any element of the offense was that the alleged victim promptly reported the incident to the

authorities, appeared to be upset, and did not want to be alone with the alleged perpetrator of the offense. These circumstances were deemed to constitute sufficient corroboration. In the case before us, M.G. reported the alleged offense within three hours of its occurrence to appropriate authorities, and appeared to be upset. Both of these circumstances are similar to the circumstances deemed to constitute sufficient corroboration in *State v. Economo*, supra. *Rossi* at ¶ 38.

**{¶ 51}** In the present case, there was far more corroboration than in either *Rossi* or *Economo*. S.P. testified that she saw Shah's hand go up A.P.'s skirt. A.P., the victim, stated that she was in shock after the incident, felt really violated, and was pretty quiet. One of the other witnesses, Y.M., corroborated the fact that A.P. was really quiet when they got to the car. Y.M. also said that A.P. appeared to be stunned. Accordingly, there was more than adequate corroboration of A.P.'s testimony.

**{¶ 52}** Shah's final argument is that there was evidence showing that he lacked the physical ability to touch A.P. for sexual gratification, or to know that the touching would be offensive to her, because he was highly impaired due to alcohol. We disagree.

**{¶ 53}** R.C. 2901.21 (C) provides that:

> Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense. [E]vidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged.

{¶ 54}   Based on this statute, Shah could not have used evidence of his intoxication to negate his mental state.   Furthermore, regarding Shah's physical state, witnesses testified that Shah was intoxicated, but Shah was able, even by his own admission, to perform many physical actions both before and after the alleged crime.   Shah claimed not to remember talking to M.P., nor did he recall the events surrounding the alleged sexual assault.   However, he was able to recall leaving the Ale Fest and asking various people where he could find a cab.   According to Shah, he asked dozens of people where he could find a cab.   Thus, Shah was able to physically walk and speak with numerous people.

{¶ 55}   Shah also recalled being transported to WPAFB by a female police officer, and then being transported to his home by a first sergeant in his military organization.   In addition, although Shah appeared intoxicated and had a moderate odor of alcohol, he was able to speak with the police officers after the incident.   Finally, none of the witnesses indicated that Shah had difficultly walking or keeping his balance.

{¶ 56}   Accordingly, the judgment was supported by sufficient evidence, and it was not against the manifest weight of the evidence.   Shah's Second Assignment of Error, therefore, is overruled.

## IV.   Conclusion

{¶ 57}   All of Shah's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN and DONOVAN, JJ.,     concur.

Copies mailed to:

Shauna Hill
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Christopher D. Roberts