[Cite as *State v. Koballa*, 2014-Ohio-3592.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100664

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CODY KOBALLA

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574524-A

**BEFORE:**    McCormack, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**    August 21, 2014

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, OH 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Marcus A. Henry
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Cody Koballa, appeals from a judgment of the Cuyahoga County Court of Common Pleas that convicted him of assaulting a firefighter. On appeal, he claims he should not be found guilty of assault because he was highly intoxicated at the time of the incident. After a careful review of the record and applicable law, we find no merit to the appeal and affirm the trial court's judgment.

## Testimony at Trial

{¶2} After a night of drinking, Koballa became highly intoxicated. His girlfriend was concerned and called 911. When the emergency crew attempted to transport him to the hospital, he punched one of the firefighters. He was charged with assault, and because the victim was a firefighter, his offense was elevated to a fourth-degree felony pursuant to R.C. 2903.13(C)(5). Koballa pleaded not guilty, and the matter proceeded to a jury trial.

{¶3} At trial, the state presented testimony from four witnesses: a paramedic from the Cleveland Emergency Medical Services ("EMS") and four firefighters from the Cleveland Fire Department ("CFD"). The defense called Koballa's girlfriend, his aunt, and the emergency room doctor who treated Koballa. Koballa also testified on his own behalf. The witnesses testified to the following events on the night of the incident.

{¶4} On the evening of November 10, 2012, Koballa, his girlfriend, and his aunt went to a club together. After the club closed at 4:00 a.m., they went to the aunt's house and met up with his aunt's brother and her boyfriend, and two of Koballa's friends. The

men started a drinking game and drank shots of vodka. The others stopped at one point but Koballa continued. He became highly intoxicated, to a point where he was unable to stand and would fall over when he tried to stand up. After an hour or so, Koballa's friends helped him out of his aunt's house and into his girlfriend's car. After they arrived at her home, the friends helped him walk upstairs to her apartment. The friends stayed for a short while and then left. Koballa tried to walk from the kitchen to the living room but fell and passed out in the hallway.

{¶5} While lying in the hallway asleep, Koballa appeared to stop breathing periodically. His girlfriend became concerned and called her sister, a nurse, who advised her to call 911. Koballa's girlfriend told the 911 operator that she thought Koballa had alcohol poisoning.

{¶6} Shortly after 7:00 a.m., members of the EMS and CFD arrived to find Koballa passed out on the floor with compromised breathing. Koballa's girlfriend told them that Koballa had been drinking and may have taken Vicodin for a collar bone injury he had sustained several weeks ago, and that she was concerned about the effect of the drug and alcohol. The EMS and CFD crew rolled Koballa over to straighten out his neck. His breathing significantly improved, and he woke up.

{¶7} Koballa then sat up, but was clearly intoxicated. Paramedic Jefferies described him as "aggressive, upset, and mumbling." When he first approached Koballa and said "how are you," Koballa swung at him, hitting the back of his hand. Out of caution, Jefferies called the police immediately.

{¶8}   The EMS and CFD crew then decided Koballa should be taken to the hospital.   Because he was unable to walk, it was decided a stair chair would be used to transport him to the ambulance.   The stair chair functioned as a dolly, and it had two nylon straps to secure a patient.   As the crew were waiting for the stair chair to be retrieved from the ambulance, Koballa became more agitated and belligerent, and his words were mostly unintelligible.

{¶9} Once the chair arrived, the EMS and CFD crew carried Koballa to the chair to strap him in.   He alternated between being loud and uncooperative to quiet and calm. When the crew were getting   ready to strap him to the chair, he began to swear and spit at them, unhappy with their presence in the house.   To protect the crew's faces, one of the them left to obtain a "spit sock" — a nylon mesh with a draw string — to place over Koballa's head.

{¶10} Before the "spit sock" arrived, several EMS and CFD workers began to strap him to the chair.   Firefighter Mark Duhigg was kneeling in front of Koballa to secure his foot in the foot step of the chair, when, all of a sudden Koballa punched him in the face.   The punch was hard enough that Duhigg's head snapped back.   Firefighter Nielipinski, who was behind the chair, described the punch as close-fisted and "purposeful."

{¶11} After Duhigg's head snapped back, paramedic Jefferies grabbed Koballa's right arm.   Koballa swung again with his left arm at Duhigg, but it was blocked by Duhigg, who then hit Koballa in the face.   Firefighter Heineke then grabbed Koballa's

left arm. Koballa started to spit at the crew. By this time the "spit sock" had arrived and it was placed over Koballa. The police then arrived and handcuffed Koballa, and he was secured into the chair and transported to the ambulance.

{¶12} Dr. Haddad treated him in the emergency room but did not recall much about the event. The doctor's emergency room report indicated Koballa was unconscious when being examined, due to alcohol consumption.

{¶13} Firefighter Duhigg initially testified he went to the emergency room the next day to seek medical attention. He later corrected himself and stated that he had gone to a chiropractor's office instead of the emergency room, and that he actually sought medical attention several days after the incident, not the next day.

{¶14} Koballa himself testified he did not recall much from the evening. He remembered going with his girlfriend and a few others to his aunt's house. He took two shots from a bottle of Three Olives Vodka, and the next thing he remembered was waking up in the hospital. He also testified that two weeks before the incident, he was treated for a broken collar bone, which he incurred while "wrestling" with someone. He was given pain medication and a sling to wear. He remembered he had the sling on that night, but did not remember what happened to it, nor did he remember whether he had taken the pain medication.

{¶15} After trial, the jury found Koballa guilty of assault. The trial court sentenced him to six months of incarceration for his fourth-degree felony offense. On

appeal, he raises two assignments of error, claiming his conviction was supported by insufficient evidence and was also against the manifest weight of the evidence.

### Standard of Review for Sufficiency and Manifest Weight of Evidence

**{¶16}** When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶17}** Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "[T]he weight to be given the evidence and the credibility of the

witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

## Mens Rea and Actus Reus

{¶18} Criminal liability is based upon the concurrence of two factors, "an evil-meaning mind" and an "evil-doing hand." *United States v. Bailey*, 444 U.S. 394, 402-410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). In other words, a criminal act contains a "mens rea" and an "actus reus." The Ohio Revised Code embodies these concepts in R.C. 2901.21 ("Requirements for criminal liability"). It states:

> (A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
>
> (1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
>
> (2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.

{¶19} Pursuant to the statute, the two essential ingredients of a crime are a voluntary physical act and a culpable mental state. Paragraph (D)(2) of the statute

elaborates on what constitutes involuntary acts: "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition." As for culpable mental states, R.C. 2901.22 ("Culpable mental states") delineates four levels of culpability: purposeful, knowingly, recklessly, and negligently.

{¶20} Here, Koballa was convicted of assault. R.C. 2903.13(A) defines assault, stating no person "shall knowingly cause or attempt to cause physical harm to another. The issue in this appeal is whether Koballa, who was undisputedly intoxicated, could have committed assault as defined. For the sake of a complete analysis, we will address the impact of voluntary intoxication on both the "evil-doing mind" and the "evil-doing hand," beginning with the former.

## Whether Voluntary Intoxication Negates A Culpable Mental State

{¶21} As a general principle, self-induced intoxication would not be a defense to any crime. However, an exception to the principle had been developed in the case law: where a "specific intent" was an essential element of the crime charged, a defendant could introduce evidence of voluntary intoxication to show the act was done without the requisite intent. *State v. Fox*, 68 Ohio St.2d 53, 428 N.E.2d 410 (1981). Thus, under the case law, voluntary intoxication may be available as an affirmative defense, depending on whether the crime charged was a "specific intent" crime or a "general intent" crime. Voluntary intoxication was a defense for a "specific intent" crime, but not a "general intent" crime.

**{¶22}** The courts were split, however, as to whether a crime that required a "knowing" state of mind, such as assault, was a "general intent" crime or a "specific intent" crime.[1] This court had consistently held that a crime that only required the proof that a defendant acted *knowingly* was not a crime of "specific intent," because it did not require the state to prove the perpetrator to have the "specific intent" to cause a certain result; therefore, voluntary intoxication would not be a defense to a "knowing" offense. *See*, *e.g.*, *State v. Ficker*, 8th Dist. Cuyahoga No. 63493, 1993 Ohio App. LEXIS 4268 (Sept. 2, 1993); *State v. Huff*, 145 Ohio App.3d 555, 763 N.E.2d 695 (1st Dist.2001). Several other districts, however, considered "knowing" crimes to be "specific intent" crimes, for which voluntary intoxication could be raised as a defense. *See*, *e.g.*, *State v. Williams*, 2d Dist. Greene No. 94CA65, 1995 Ohio App. LEXIS 2414 (June 14, 1995); *State v. Rohrer*, 4th Dist. Ross No. 936, 1982 Ohio App. LEXIS 14228 (Dec. 6, 1982).

**{¶23}** In 2000, the General Assembly resolved any doubt about whether voluntary intoxication could negate a culpable state of mind by amending R.C. 2901.21. The amended statute added section (C), which states: "Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."

---

[1] R.C. 2901.22(B) defines "knowingly." It states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{¶24}** Pursuant to the amended statute, a lack of capacity to form an intent to commit a crime due to self-induced intoxication is no longer a defense to a crime where a mental state is an element of the crime. Subsequent to the amendment of the statute, the courts, including this court, have applied the statute and held that the defense of involuntary intoxication is no longer applicable where the offense includes a culpable mental state. *See*, *e.g*., *State v. Fredericy*, 8th Dist. Cuyahoga No. 95677, 2011-Ohio-3834 (pursuant to the amended statute, voluntary intoxication no longer a defense for felonious assault); *State v. Searles*, 8th Dist. Cuyahoga No. 96549, 2011-Ohio-6275 (voluntary intoxication not available as defense for attempted murder conviction); *State v. Stockhoff*, 12th Dist. Butler No. CA2001-07-179, 2002-Ohio-1342 (burglary); *State v. Terzo*, 12th Dist. Butler No. CA2002-08-194, 2003-Ohio-5983 (aggravated menacing); *State v. Sayler*, 10th Dist. Franklin No. 08AP-625, 2009-Ohio-1974 (harassment with a bodily substance); *State v. Shah*, 2d Dist. Montgomery No. 25855, 2014-Ohio-1449 (sexual imposition).

**{¶25}** In *State Milton*, 8th Dist. Cuyahoga No. 97245, 2012-Ohio-2386, the appellant was convicted of assaulting a police officer, and he claimed his (self-induced) intoxication prevented him from forming the "knowing" state of mind necessary to have committed the crime of assault. This court held that under the amended R.C. 2901.21(C) that defense was no longer available.

### Whether Defendant's Act was Involuntary Precluding Conviction of Assault

{¶26} In the instant appeal, Koballa appears to concede that voluntary intoxication does not negate the "knowing" state of mind required for a conviction of assault. Rather, he directs our attention to the "actus reus" portion of R.C. 2901.21. R.C. 2901.21(A)(1) requires the state to prove a defendant's conduct to be a *voluntary* act, as opposed to involuntary acts, which was defined as "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition."

{¶27} Koballa argues that his act of punching the firefighter was an involuntary act because he was in a state of alcohol-induced unconsciousness during the incident. He presents this claim both as a sufficiency challenge (under the first assignment of error) and a manifest-weight challenge (under the second assignment of error). We first clarify whether these challenges are properly raised.

{¶28} As stated earlier, in reviewing a claim that the evidence is not sufficient to sustain a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A sufficiency review thus addresses "the sufficiency of the state's evidence, not the strength of defense evidence." *State v. Hanock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 38. Therefore, Koballa's claim that he should not have been convicted of assault because his intoxication rose to the level of unconsciousness precluding him from acting voluntarily is a manifest-weight issue, not a sufficiency issue.

{¶29} At trial, the witnesses varied in describing Koballa's demeanor when he was being strapped to the stair chair. His girlfriend testified that his eyes were closed while sitting on the chair, and she believed the emergency crew hurt his collar bone while putting a strap over him. Paramedic Jefferies testified that Koballa was conscious during the incident, alternating between being loud and quiet. A few witnesses testified he was flailing his arms, and swearing and spitting at the EMS and CFD crew. Lieutenant Verzi, who was at Koballa's feet trying to strap him into the chair, recalled Koballa opened his eyes but was not speaking fluently. He also described him as in an alcoholic stupor and "in and out of consciousness." Firefighter Heineke testified Koballa was very subdued before he punched Duhigg, to Heineke's surprise. Dr. Haddad's report indicated Koballa was unconscious when he was being examined due to his intoxication. Koballa himself testified he was in a complete blackout and did not recall anything about the incident.

{¶30} Appropriately, the trial court here instructed the jury on involuntary acts, stating that an act is not a criminal offense "where a person commits an act while unconscious as in a blackout convulsion due to sleep or injury" — a definition substantially similar to R.C. 2901.21(A)(1). The witnesses gave various descriptions of Koballa. He was flaring his arms, swearing, spitting, at times loud and at times subdued. Koballa was the only one who testified that he was in a complete blackout. As the choice between credible witnesses and conflicting testimony rests solely with the jury, we defer to the jury the determination of whether Koballa's state of alcoholic stupor rose to

the level of unconsciousness rendering his act of striking the firefighter involuntary. Having reviewed the record, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶31} The first and second assignments of error are without merit, and the judgment of the Cuyahoga County Court of Common Pleas is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, P.J., and
MELODY J. STEWART, J., CONCUR